GILLESPIE *v.* BOARD OF COUNTY AUDITORS OF
OAKLAND COUNTY.

1. OFFICERS—CONSTITUTIONAL LAW—DECREASE IN SALARIES.
  Constitutional prohibition against decrease of salary during term of office applies to all public officers having fixed terms and to all salary-fixing bodies (Const. 1908, art. 16, § 3).

2. JUDGES—CONSTITUTIONAL LAW—DECREASE IN SALARIES—TAXATION.
  Board of supervisors *held*, without power to decrease portion of salary paid by county to circuit judge during his term of office, notwithstanding curtailment of tax revenue effected by maximum property tax rate amendment and provision of Constitution and statute requiring that tax rate be uniform (Const. 1908, art. 10, §§ 3, 21, art. 16, § 3, Act No. 62, Pub. Acts 1933).

Petition by Glenn C. Gillespie, one of the circuit judges of the sixth judicial circuit, for mandamus to compel the Board of County Auditors and Board of Supervisors of Oakland County to pay petitioner salary at rate of $5,000 per year. Submitted April 24, 1934. (Calendar No. 37,744.) Writ allowed June 4, 1934.

*Pelton & McGee,* for plaintiff.

*Arthur P. Bogue,* Prosecuting Attorney, and *Robert D. Heitsch,* Assistant Prosecuting Attorney, for defendants.

WIEST, J. This is an original proceeding in mandamus. Plaintiff is a constitutional officer, being one of the circuit judges of the sixth judicial circuit, comprising the county of Oakland. He was elected to that office in April, 1929, for a term of six years, commencing January 1, 1930, and is now serving. At the time of his election and commencement of service, his salary, fixed by legislative enactment, was $6,000 per annum, payable by the State, and an additional salary of $5,000, payable by the county of Oakland, under resolution of the board of supervisors. The Oakland board of supervisors, at its session in the fall of 1933, by resolution, decreased the salary to be paid by the county to circuit judges to $2,000 per year. In February, 1934, plaintiff served a written demand on the board of supervisors and board of county auditors of Oakland county for the payment of his salary at the rate of $5,000 per year. Upon refusal to comply this proceeding was instituted.

The main question relates to the power of the board of supervisors to decrease plaintiff's salary after he assumed office on January 1, 1930, in view of the provisions of article 16, § 3, of the Constitution. The applicable part of that section reads:

"Salaries of public officers, except circuit judges, shall not be increased, nor shall the salary of any public officer be decreased, after election or appointment."

Circuit judges are excepted from the inhibition on increase of salary; while all public officials are with-

in the inhibition against decrease of salary during term of office. The mandate applies to all public officers having fixed terms and to all salary-fixing bodies. See *Crawford* v. *Hunt,* 41 Ariz. 229 (17 Pac. [2d] 802).

The Constitution, article 7, § 12, empowered the board of supervisors to fix additional salary. It reads:

"Each of the judges of the circuit courts shall receive a salary payable monthly. In addition to the salary paid from the State treasury, each circuit judge may receive from any county in which he regularly holds court such additional salary as may be determined from time to time by the board of supervisors of the county. In any county where such additional salary is granted it shall be paid at the same rate to all circuit judges regularly holding court therein."

The legislature, under that section, fixed the annual salary to be paid circuit judges by the State at the sum of $6,000. 3 Comp. Laws 1929, § 13673. The board of supervisors of Oakland county had, previous to plaintiff's entry upon his term of office, fixed the additional salary at the sum of $5,000 per annum.

Defendants rely upon the holding in *Adsit* v. *Smith,* 129 Mich. 4. We need but point out that the Constitution, at that time in its temporary schedule, inhibited the legislature only from increasing or diminishing compensation of officers. The Constitution of 1908 clearly extends the inhibition against decreases to the board of supervisors. The language "such additional salary as may be determined from time to time by the board of supervisors of the county," was stressed in the *Adsit Case* and was of signal moment for at that time there was no re-

straint elsewhere imposed by the Constitution, and this permitted change at any time. The same language is in the present Constitution but subjected to the mentioned restraint on decrease after election or appointment.

The board of supervisors had no power to decrease the salary during plaintiff's term of office.

It is urged in behalf of defendants that section 21, added to article 10, of the Constitution, by amendment in 1932, operates to nullify, modify or repeal, by implication or otherwise, article 10, § 3, and any statute enacted to carry out the provisions of such section 3.

Section 3 of article 10 requires the legislature to provide by law a uniform rule of taxation. Section 21 of article 10 (1932 amendment) relates also to taxation and provides:

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property, except taxes levied for the payment of interest and principal on obligations heretofore incurred, which sums shall be separately assessed in all cases: Provided, that this limitation may be increased for a period of not to exceed five years at any one time, to not more than a total of five per cent. of the assessed valuation, by a two-thirds vote of the electors of any assessing district, or when provided for by the charter of a municipal corporation: Provided further, that this limitation shall not apply to taxes levied in the year 1932."

It is said that article 10, § 3, and appropriate legislation thereunder, relative to assessment, levy and collection of taxes, afforded the county revenue sufficient to meet operating expenses, inclusive of salaries of officials, but section 21 of that article established a maximum rate of taxation rendering

it mandatory to reduce salaries of all officers and curtail expenses, else the county could not function, and plaintiff's salary reduction was but one instance out of the many reductions made.

By Act No. 62, Pub. Acts 1933, the legislature provided for property tax limitation, under article 10, § 21, by setting up a method of equalization and allocation among governmental units, and it is said that the tax allocation commission has allocated for county purposes in Oakland county three and four-tenths of the 15-mill limitation. This will afford a tax of $3.40 per thousand of valuation, to be spread for county purposes, and bring $495,156.12, if collected, of which it is stated, $269,959.20 is devoted to payment of salaries.

We find nothing in article 10, § 21, of the Constitution abrogating the other provisions of the Constitution upon which plaintiff relies. Nor can we consider curtailment of tax revenue a valid ground for reducing plaintiff's salary during his term of office.

It will be noted that article 10, § 21, expressly provides that the mill limitation may be exceeded for a period of not to exceed five years at any one time, to a total of not more than five per cent. of the assessed valuation, by a two-thirds vote of the electors of the assessment district.

Plaintiff has an existing right to have the salary at the rate of $5,000 per annum paid to him by the county of Oakland and, if necessary, the writ of mandamus will issue.

The question being of public moment there will be no costs to either party.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, BUTZEL, and EDWARD M. SHARPE, JJ., concurred. BUSHNELL, J., did not sit.