## WAYNE CIRCUIT JUDGES *v.* WAYNE COUNTY

### OPINION OF THE COURT

1. COURTS—JUDICIAL RESPONSIBILITY—INHERENT POWER—CONSTITUTIONAL LAW.

A court charged with the preclusive responsibility for efficient statewide judicial service, as the Supreme Court is, receives and accepts with that responsibility the inherent power and duty to take such action as is necessary to fulfill the constitutional obligation thus undertaken.

---

* Continued from Volume 385 Mich.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 20 Am Jur 2d, Courts §§ 64, 65, 78, 79.
  56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 192.
[5] 20 Am Jur 2d, Courts §§ 78, 79.
[6] 20 Am Jur 2d, Courts §§ 16, 17, 23, 64, 65.
[7] 16 Am Jur 2d, Constitutional Law §§ 91, 227–230.
[8] 16 Am Jur 2d, Constitutional Law §§ 227–230.
  20 Am Jur 2d, Courts § 33.
[9, 14] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 830.
[10] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 870, 877.
[11] 46 Am Jur 2d, Judgments § 232.
[12, 13, 16] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 193 *et seq.*
[15] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 804 *et seq.*
[17, 19] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 219–225.
[18] 20 Am Jur 2d, Courts § 4.
[20] 20 Am Jur 2d, Courts § 4.
  56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 219–225.
[21] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 193–195, 234, 235.
[22] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 234, 275.
[23] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 258 *et seq.*
[24, 25] 20 Am Jur 2d, Courts §§ 4, 17.
[26, 27, 29] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 877.
[28] 43 Am Jur, Public Officers § 345.

2. COURTS—CONSTITUTIONAL LAW—STATE GOVERNMENT—INHERENT POWER.

The constitutionally assigned duty of the Supreme Court carries with it the power and responsibility of making sure that the Court functions as a co-equal branch of the state's government, and therefore imposes obligation to ascertain critical judicial needs and reasonableness or unreasonableness of the monetary amount required to meet situations which arise (Const 1963, art 6, § 1).

3. COURTS—COUNTIES—JUDICIAL EXPENSES—STATE'S BENEFIT.

Valid charges upon funds of a county can be made by exercise of the inherent power of the state's judicial system, because expenses of justice are incurred for the benefit of the state, and charged against the counties in accordance with old usage as a proper method of distributing the burden.

4. COURTS — JUDICIAL NEEDS — PROBATION OFFICERS — COUNTIES — LEGAL DUTY.

The defense that a county has exclusive power to determine and allocate where its available funds will go and that therefore it need not pay for additional administrative help in the courts is not valid where the facts are that the courts need additional help, especially probation officers, and the amount requested to pay for the help is reasonable.

5. COURTS—INHERENT POWERS—JUDICIAL EXPENSES—STATE GOVERNMENT.

Michigan's "one court of justice" *must* possess the inherent power to determine and, compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer justice, if it is to be in reality a co-equal, independent branch of the state's government (Const 1963, art 6, § 1).

SEPARATE OPINION

T. E. BRENNAN, J.

6. COURTS—CONSTITUTIONAL LAW—JUDICIAL POWER—LEGISLATURE.

*The Michigan constitution established that the judicial power of the state is vested exclusively in one court of justice and the legislature may neither abolish that court nor render the court inoperative by refusing financial support (Const 1963, art 6, § 1, art 9, § 1).*

7. CONSTITUTIONAL LAW—STATE TREASURY—APPROPRIATIONS—LEGIS-
LATIVE ENACTMENT.

> The Michigan constitution provides that no money shall be paid
> out of the state treasury except in pursuance of appropriations
> made by law; an appropriation is a legislative enactment
> and, in establishing that no money is to be paid out of the
> state treasury .except in pursuance of appropriation, the
> constitution requires that legislative judgment be exercised in
> advance of the expenditure of state funds (Const 1963, art
> 4, § 31, art 9, § 17).

8. CONSTITUTIONAL LAW—LEGISLATURE—COURT OF CLAIMS ACT—
APPROPRIATIONS—PAYMENT OF CLAIMS.

> The Michigan constitution requires the legislature to provide a
> method for claims to be processed against the state and that
> method is embodied in the Court of Claims Act; however, the
> Court of Claims Act makes no provision for payment of claims
> against the state where no appropriation has been made but
> requires certification to the legislature of such claims and
> payment thereof "as soon as moneys are available for such
> purpose" (Const 1963, art 9, § 22; MCLA § 600.6401 et seq.).

9. COUNTIES — COUNTY TREASURERS — COUNTY FUNDS — APPROPRIA-
TIONS — BOARD OF SUPERVISORS — BOARD OF AUDITORS — STATUTES.

> No provision for prior appropriation appears in the statutes
> controlling the duties of the county treasurer who has the
> statutory duty to pay out county funds only on the order of
> the board of supervisors except where special provision for the
> payment thereof is, or shall be otherwise made by law and,
> in Wayne County, the treasurer's obligation is fixed by a
> statute which requires payment of claims on warrant from
> the Board of Auditors (MCLA §§ 47.56, 48.40).

10. COUNTIES—JUDGMENT—LEVY AND COLLECTION—COUNTY TREAS-
URERS.

> Enforcement of a judgment against a county is governed by a
> statute providing that it shall be levied and collected as other
> county charges and, when so collected, be paid by the county
> treasurer to the person to whom the same shall have been
> adjudged (MCLA § 600.6093).

11. JUDGMENT—EVIDENCE OF INDEBTEDNESS—CONSTITUTIONAL LAW.

> The final judgment of a court is clearly an evidence of in-
> debtedness which is excepted from the 15 mill limitation in
> the Michigan constitution (Const 1963, art 9, § 6).

12. COUNTIES — BOARDS OF SUPERVISORS — JURISDICTION — CIRCUIT
COURTS — APPROPRIATIONS — COUNTY FUNDS — COUNTY PURPOSES.
    *Boards of supervisors are authorized to pass such laws, regula-
    tions and ordinances relating to purely county affairs as they
    may see fit, but which shall not be opposed to the general laws
    of the state of Michigan; the general grant of legislative power
    to counties specifically excludes any jurisdiction over the cir-
    cuit court; and, within the limits of its delegated legislative
    power, counties may pass appropriations for the expenditure
    of county funds for county purposes (MCLA § 46.11).*

13. COUNTIES—PAYMENT OF PUBLIC FUNDS—CONSTITUTIONAL LAW—
LEGISLATIVE POWER—SENATE—HOUSE OF REPRESENTATIVES.
    *In the scheme of county government, the legislature has not seen
    fit to delegate that ultimate power of the purse by which a
    legislative judgment must be made in advance of payment
    of any and all public funds and it is doubted that any at-
    tempt to do so would be valid for the Michigan constitution
    places the legislative power of the state in the senate and
    house of representatives (Const 1963, art 4, § 1).*

14. COUNTIES — CHARGES — CONTRACTS — STATUTES — CONSTITU-
TIONAL LAW.
    *Counties are obliged to pay all proper charges against them,
    whether those charges are fixed by law or incurred by contracts
    made in pursuance of statutory or constitutional authority.*

15. COUNTIES — JURISDICTION — CIRCUIT COURTS — STATUTES —
CONSTITUTIONAL LAW — APPROPRIATIONS.
    *No county legislative judgment may be exercised with respect
    to funding circuit court functions except where statutes author-
    ize county appropriations, the county merely pays the proper
    statutory and constitutional charges made upon it by reason
    of circuit court needs and, since counties have no general
    legislative jurisdiction over the circuit court, they are without
    authority, in the absence of special statutes, to enact appropria-
    tions for the operation of that court.*

16. MARRIAGE — MARRIAGE COUNSELLING SERVICE — COUNTIES —
STATUTES — APPROPRIATIONS.
    *The Wayne County Board of Supervisors, by statute, has author-
    ity to appropriate money for the marriage counselling service
    established in the Wayne Circuit Court; the county has legis-
    lative judgment to exercise with respect to the operation of
    that service and can increase or decrease the service as the*

*need shall appear and the funds are available (MCLA § 551.332).*

17. COURTS — LAW CLERKS — COMPENSATION — COUNTIES — BOARD OF SUPERVISORS — APPROPRIATIONS — STATUTES.

*The statute governing research law clerks does not grant to the county board of supervisors in express terms any power to appropriate money for their employment; thus, the only possible meaning of the phrase "within the sum appropriated" in that statute, is to require approval or concurrence by the county board of supervisors on the question of the amount of the clerk's compensation (MCLA § 600.1471).*

18. COURTS—LAW CLERKS—LEGISLATURE—COUNTIES.

*The legislative judgment that the circuit court may employ law clerks for each of the judges was made by the state legislature and the number of clerks to be employed is not within the jurisdiction of the county board to determine.*

19. COURTS—JUDICIAL ASSISTANT—GOVERNOR—COUNTIES.

*The county has the limited legislative function of approving the amount of compensation as fixed by the recommending judges when a judicial assistant has been appointed by the Governor upon recommendation of the judges in courts of record having ten or more judges (MCLA § 600.1481).*

20. COURTS—JUDICIAL ASSISTANT—COUNTIES—LEGISLATURE.

*The legislative decision upon the question of whether or not a judicial assistant shall be employed in courts of record having ten or more judges is not for the county to make as the state legislature has already made it and the county cannot foil the legislative action of the state.*

21. COUNTIES—BOARD OF AUDITORS—BOARD OF SUPERVISORS.

*Wayne County has a board of auditors whose powers and duties are fixed by law and the board of supervisors of that county may not exercise the powers conferred upon the board of auditors (MCLA §§ 47.51, 47.59).*

22. COUNTIES—BOARD OF AUDITORS—COURTS—CLERKS—ASSISTANTS —COMPENSATION.

*The auditors of Wayne County are not authorized to determine the number of clerks and assistants in the circuit and other courts; as to persons employed in the several county offices, the auditors were empowered to determine the number and fix compensation; as to court employees, the power was only to fix compensation (MCLA § 47.58).*

23. Labor Relations—Public Employee Relations Act—Public Employer—Contracts—Collective Bargaining Agreement.

> A public employer is required to confer in good faith with respect to wages, hours and other terms and conditions of employment whenever the provisions of the public employee relations act come into play, and it is the public employer which enters into a written contract or collective bargaining agreement (MCLA § 423.201 et seq.).

24. Courts—Circuit Court—Employees—Public Employee Relations Act—Clerks—Stenographers—Judicial Assistants—Law Clerks—Marriage Counselling—Friend of the Court—Probation Officers.

> The following persons are employees of the circuit court, as to whom the circuit court is the public employer, within the meaning of the public employee relations act: (1) deputy circuit court clerks, including the chief deputy circuit court clerk; (2) court stenographers; (3) judicial clerks; (4) judicial assistants; (5) law research clerks; (6) the director of marriage counselling, and the professional and clerical staff of the marriage counselling service; (7) the friend of the court; (8) probation officers, including the chief probation officer; (9) all other administrators, clerks, stenographers, secretaries, typists and employees working under the direction and control of the judges of the circuit court or the presiding judge thereof, or working under the direction and control of any of the clerks, assistants, or officers mentioned above (MCLA §§ 423.215, 551.331, 552.251, 600.565, 600.579, 600.1101, 600.1471, 600.1481, 771.7).

25. Courts—Employees—Legislature—Statutes.

> The state legislature, to the extent that it does not impair the constitutional functioning of the courts, has the authority to determine the proper number of court employees and, in the absence of specific statutory declaration, it devolves upon the circuit court itself to specify the number of employees needed.

26. Mandamus—Counties.

> Mandamus will lie to compel a county to pay proper charges against it.

27. Mandamus—Counties—Statutes—Courts—Employees.

> Mandamus should issue upon application of the judges of the Third Judicial Circuit of Michigan directing the County of Wayne to pay the appropriate compensation as fixed in conformity to statutes and the Michigan Supreme Court opinion

of all employees of the circuit court established by law or needed in the operation of the circuit court, upon certification of the Presiding Judge of the Third Judicial Circuit.

DISSENTING OPINION

ADAMS, J.

28. COURTS — CIRCUIT COURTS — PUBLIC EMPLOYER — EMPLOYEES — COMPENSATION — MANDAMUS. ·

*The circuit court is the public employer of its employees with authority to act in accordance with the act providing that a public employer shall bargain collectively with the representatives of its employees; however, nothing in that act deals with the appropriation of funds to pay employees or authorizes an action of mandamus to compel payment (MCLA § 423.201 et seq.).*

29. MANDAMUS—COURTS—EMPLOYEES—COMPENSATION—COUNTIES.

*The danger of the issuance of a writ of mandamus to force payment of compensation "of all employees of the circuit court established by the law or needed in the operation of the circuit court" is that it disregards the realities of a county's financial resources; thus, in the absence of a showing that employees are essential to assure the existence or basic functioning of the court, a writ of mandamus should be denied.*

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and Fitzgerald and Levin, JJ., affirming Wayne, William J. Beer, J. Submitted June 4, 1969. (No. 9 June Term 1969, Docket No. 52,381.) Decided December 8, 1969. Submitted on rehearing September 24, 1970. (No. 18 June Term 1970.) Resubmitted on rehearing May 3, 1971. (No. 34 April Term 1971.) Decided September 30, 1971. Applications for rehearing denied November 9, 1971.

15 Mich App 713 affirmed.

Complaint by the judges of the Third Judicial Circuit against Wayne County, its Board of Supervisors, its Board of Auditors, and its treasurer, for

a writ of mandamus to compel the appropriation of money for salaries of additional personnel. Judgment for plaintiffs. Defendants appealed to the Court of Appeals. Affirmed. Defendants appealed. Reversed and remanded for entry of a declaratory judgment, 383 Mich 10. Rehearing granted. Affirmed.

*Travis, Warren, Nayer & Burgoyne,* for plaintiffs.

*William L. Cahalan,* Prosecuting Attorney, *Aloysius J. Suchy,* and *David R. Kaplan,* Assistant Prosecuting Attorneys, for defendants.

## ON REHEARING

PER CURIAM. Since our opinions on former review of this consequential appeal were released (*Wayne Circuit Judges* v. *Wayne County* [1969], 383 Mich 10) the opinion endorsed at the time by Justices DETHMERS and BLACK has been authenticated by decisions handed down by the Supreme Court of Missouri (*State, ex rel. Weinstein,* v. *St. Louis County* [Mo, 1970], 451 SW2d 99; expressly quoting and following *Noble County Council* v. *State, ex rel. Fifer,* [1955], 234 Ind 172 [125 NE2d 709]) and by the Supreme Court of Pennsylvania (*Commonwealth, ex rel. Carroll,* v. *Tate* [1971], 442 Pa 45 [274 A2d 193]).

In view of the developing strength of the principle of inherent power and duty of the judiciary, called into play as it was by the opinion of Justices DETHMERS and BLACK aforesaid, this Court is constrained on rehearing to adopt that opinion; adding only that the judiciary, in Michigan's instance our "one court of justice" (Const 1963, art 6, § 1), *must* stand foursquare in support of the constitutional doctrines which, most recently in the *Tate* case, were declared.

"Must" we have accented, just as the *Tate* Court stressed "must possess" in this terse and pointed summary of constitutional necessity (*Tate* at p 52):

"Expressed in other words, the Judiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government. This principle has long been recognized, not only in this Commonwealth but also throughout our Nation."

Upon due consideration of the foregoing it is ordered that the DETHMERS-BLACK opinion of 1969 be and become the opinion of the Court on rehearing; that it supersede the other opinions filed December 8, 1969; that the respective judgments of the circuit court and Court of Appeals (15 Mich App 713) be and they are affirmed, and that the defendants be and they are granted a period of 60 days, from and after release of the instant opinion and order, within which to prepare for and then execute the presently upheld peremptory writ.

To guard against all possibility of abuse of the authority this opinion confirms, and to guard for that matter against even the appearance of any such abuse, an administrative order will enter separately, providing that no judge of a subordinate court may hereafter, by peremptory writ or otherwise, order the expenditure of public funds for any judicially-required purpose until such judge has submitted his proposed writ or order to the constitutional office of Court Administrator (Const 1963, art 6, § 3), and has obtained due approval thereof by that office. The order will provide that such restraint shall not apply to orders for payment of trial or appellate costs in cases where same

are due for entry on behalf of indigent defendants accused or convicted of felony.

T. M. KAVANAGH, C. J., and BLACK, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred.

T. E. BRENNAN, J. (*separate opinion*). This action was commenced on April 2, 1968, by the filing of plaintiffs' complaint in the circuit court for the County of Wayne.

The complaint alleged that the plaintiffs were duly elected and qualified circuit judges for Wayne County, the Third Judicial Circuit of Michigan.

The complaint alleges that plaintiffs have inherent power to "provide a sufficient number of Court employees with adequate and reasonable compensation in order to permit and expedite the efficient administration of justice."

Specifically, the complaint stated the need for additional probation officers, research clerks and a judicial assistant. It further alleged that plaintiffs had the inherent authority to employ counsel, on an *ad hoc* basis to prosecute the instant litigation and charge the defendant county with the reasonable compensation and expenses of such counsel.

A circuit judge from adjoining Oakland County was assigned to hear the cause. After extended hearings, he entered a judgment on October 15, 1968.

The judgment provided that plaintiffs were entitled immediately to appoint 11 additional probation officers, at a minimum salary of $8,736 per annum; a judicial assistant at a minimum salary of $25,000 per annum; 8 additional law clerks at a minimum salary of $9,000 per annum. The judgment further provided that the defendants,

"take all requisite action to appropriate, provide or make available the funds required to permit such immediate appointment and compensation of such personnel * * * ."

The judgment also concluded that plaintiffs had the right to employ counsel to prosecute the instant litigation, and required the county to audit and pay counsel for services rendered and expenses incurred in connection therewith.

Defendants appealed. The Court of Appeals affirmed. 15 Mich App 713.

We granted leave, and on submission here affirmed in part and reversed in part, remanding the cause to circuit for further proceedings. 383 Mich 10.

Plaintiffs applied for rehearing, which was granted.

These are difficult times.

The inflation of prices for goods and services which began in the 1940's has so accelerated in recent years that the national currency itself has ceased to be an accurate measure of the value of things. We must talk in terms of 1958 dollars, 1963 dollars, 1967 dollars.

Pressures for tax relief have mounted to crisis proportions. Competition for available tax dollars among the various agencies of government has made the function of apportionment between them ever more delicate, ever more sensitive.

Public employees, long left standing on the outside looking into the nation's dizzying wage-price escalation, have organized and demanded their fair share of the common treasury.

In spite of skyrocketing budgets and increasing deficits in national, state and local governments, the courts have not kept pace.

An epidemic of crime, and a plague of civil litigation, no less than an increasing public demand for judicial resolution of problems not heretofore regarded as justiciable, have united to create a mountainous logjam of judicial business.

At the same time, judicial budgets have been largely static, barely keeping abreast of inflation and scarcely adequate to provide for the mounting demands upon court facilities.

It has been necessary for the Chief Justice of the United States almost literally to take to the stump in an effort to persuade the American people of the need for higher priority in the national purse for the administration of justice.

Several of our sister states, notably Indiana, Missouri and Pennsylvania have found it necessary to take or threaten drastic self-help for the courts in those jurisdictions.

In Indiana, *Noble County Council* v. *State, ex rel. Fifer,* (1955), 234 Ind 172 (125 NE2d 709), the Supreme Court declared the right of the judicial branch of government to mandamus the appropriation of county funds for the payment of the salary of a probation officer for one of its circuit courts.

Indiana's Supreme Court withheld issuance of the writ, assuming voluntary compliance with its decision, thus avoiding the final confrontation between judicial and legislative branches of government. Still the threat was unmistakable, and the implication clear.

Missouri approached the problem in *State, ex rel. Weinstein,* v. *St. Louis County* (Mo, 1970) 451 SW 2d 99. Its Supreme Court held that the juvenile court had the right to determine the number of needed employees, hire them and fix their compensation.

The action was one of *quo warranto*. The judgment "ousted" the county from interference with the judicial prerogative, except to the extent that the county could appeal the juvenile court's budget to the Supreme Court.

That eventuality actually came to pass in Pennsylvania. *Commonwealth, ex rel. Carroll,* v. *Tate* (1971), 442 Pa 45 (274 A2d 193), details the efforts of the judges of the Common Pleas court of Philadelphia to obtain the funds they regarded as reasonably necessary for the efficient and effective operation of the Philadelphia courts.

From the original and supplemental budget requests totalling over 21 million dollars, the county approved only 16.4 million. The judges brought an action for mandamus, on the trial of which $2.4 million was ordered appropriated. On appeal, the Pennsylvania Supreme Court affirmed the award, reducing the amount to $1.36 million to reflect the proportion of the budget year which had elapsed.

Our own previous opinion in this cause, *Wayne Circuit Judges* v. *Wayne County* (1969) 383 Mich 10, was there cited along with numerous authorities from other jurisdictions for this proposition:

"Expressed in other words, the Judiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government. This principle has long been recognized, not only in this Commonwealth but also throughout our Nation." *Commonwealth, ex rel. Carroll,* v. *Tate, supra,* p 52.

In general, our prior opinion supported these broad principles. But there is a wide gulf between the Pennsylvania, Missouri and Indiana approach

and the approach which this Court approved in *Wayne Judges.*

We have never doubted the inherent power of a constitutional court to sustain its existence.

The constitution established that the judicial power of the state is vested exclusively in one court of justice.[1] The legislature may not abolish that court. Neither is it permissible for the legislature to render the court inoperative by refusing financial support.[2]

Our problem in Michigan stems in part from the existing hodgepodge of statutes by means of which the legislature over the years has discharged its obligation to provide the courts with sufficient personnel to carry on the administration of justice.

A look at the condition of things in Wayne County will demonstrate the lack of cohesive policy with respect to the operation of the circuit courts.

### Court Clerks

Article 6, § 14, of the Constitution of 1963, provides that the county clerk shall be the clerk of the circuit court. The county clerk is an elected county official. He receives a salary as determined by the board of supervisors. MCLA § 45.401 (Stat Ann 1961 Rev § 5.911). He is entitled to appoint deputies, who are empowered to do and perform all the duties which devolve upon his office. MCLA § 45.41 (Stat Ann 1961 Rev § 5.1131).

By statute, that constitutional mandate is implemented. MCLA § 600.571 (Stat Ann 1971 Cum Supp § 27A.571). The county clerk is required to attend all sessions of the circuit court, an obvious physical impossibility in Wayne County.

---

[1] Const 1963, art 6, § 1.
[2] Const 1963, art 9, § 1.

MCLA § 600.579 (Stat Ann 1971 Cum Supp § 27A.579) provides that the county clerk in counties over 1,000,000 population shall appoint from the civil service list, a chief deputy circuit court clerk, and one deputy circuit court clerk for each acting circuit judge in the county. The salary of the deputy circuit court clerks is required to be at least $10,750. The county civil service commission, with approval of the board of supervisors, is permitted to increase the salaries of deputy circuit court clerks. The salaries of deputy court clerks are to be paid by the county. The statute is silent on the compensation of the chief deputy.

In *Bartkowiak* v. *Wayne County* (1955), 341 Mich 333, this Court held that the circuit court had no authority in the light of then existing legislation—the county civil service act, MCLA § 38.401 *et seq.* (Stat Ann 1953 Cum Supp § 5.1191[1] *et seq.*), and the court clerks salary act, CLS 1956, § 692.601 *et seq.* (Stat Ann 1953 Cum Supp § 5.852 *et seq.*)—to fix the compensation of deputy circuit court clerks.

Previous to the *Bartkowiak* case, this Court had ruled in *Sabbe* v. *Wayne County* (1948), 322 Mich 501, that deputy court clerks were purely ministerial and not judicial officers, therefore included in the county civil service. We further held that their classification under civil service as county employees was no impingement upon the separation of powers, citing *Duncan* v. *Wayne County* (1947), 316 Mich 513.

Justice DETHMERS, writing for the Court in *Sabbe,* held:

"Plaintiff relies upon the following statement concerning a county clerk appearing in this Court's opinion in *Smith* v. *Kent Circuit Judge* [1905], 139 Mich 463:

" 'He is therefore subject to all the legitimate orders of the court of which he is clerk.'

"The fact that the clerk is subject to the legitimate orders of the court does not make his functions judicial, nor may the court lawfully order him to perform judicial duties."

Being part of the classified county civil service, deputy circuit court clerks are removable only for cause, which may be appealed to the civil service commission. MCLA § 38.416 (Stat Ann 1971 Cum Supp § 5.1191[16]).

In *Bischoff* v. *Wayne County* (1948), 320 Mich 376, this Court held that a deputy circuit court clerk, employed as "chief court clerk" in Wayne County was properly classified a Court Clerk IV by the county civil service commission. The classification was at odds with the wishes of the county clerk. In an opinion by Justice NORTH, this Court said,

"In contrast with plaintiff's position the following appears as to the employees who are classified as court executives in the other courts or court departments hereinbefore noted. Court executives II have no superior in their own department intervening between them and the 'judge or official of comparable rank' under whom they serve. Apparently in the exercise of its judgment the civil service commission concluded that since the comparable positions in the circuit court were occupied by county clerk Lingeman and his chief deputy Sullivan, notwithstanding they were not under civil service, the classification of court executive I or court executive II should not be made applicable to any of the employees in the county clerk's department. Further, from its investigations incident to making classifications the commission found that the nature and character of the work performed by those who were classified as court executives, incident to the work

of the noted inferior courts and court departments, differed very widely from the work and responsibilities of plaintiff in his subordinate position in the county clerk's department. The commission's classification of plaintiff as clerk IV was in no sense based upon the assumption that the circuit court was not 'a major court.' In view of the disclosed circumstances there is no justification for finding that the civil service commission acted either arbitrarily or capriciously or in bad faith in not classifying plaintiff as a court executive." Pp 391, 392.

The *Bartkowiak, Sabbe* and *Bischoff* cases cast light on the "hands off" attitude of former times, in which it was thought that the administration of the courts was a thing distinct and apart from the administration of justice.

## COURT STENOGRAPHERS

Assigned to each judge of the 3rd Circuit is a court stenographer. MCLA § 600.1101 (Stat Ann 1962 Rev § 27A.1101). Their compensation is fixed by statute, MCLA § 600.1123 (Stat Ann 1971 Cum Supp § 27A.1123), at $11,000, and they are paid by the County of Wayne. MCLA § 600.1114 (Stat Ann 1962 Rev § 27A.1114). Court stenographers are appointed by the Governor, and serve at his pleasure, unless suspended by the court for incompetence or misconduct.

A court stenographer may, with the approval of the circuit judge, appoint an assistant. MCLA § 600.1107 (Stat Ann 1962 Rev § 27A.1107). However, the assistant is paid by the stenographer. The judge may authorize the stenographer to employ temporary assistants who are paid by the county.

Court stenographers are excepted from classified county civil service.

DEPUTY SHERIFFS

By law, the sheriff of every county or his deputy, is required to attend sessions of the circuit court, MCLA § 600.581 (Stat Ann 1962 Rev § 27A.581), execute orders of the court, MCLA § 600.582 (Stat Ann 1962 Rev § 27A.582), and summon and attend to the jury, MCLA § 600.588 (Stat Ann 1962 Rev § 27A.588).

The sheriff, like the county clerk, is an elected county official. His salary is fixed by the board of supervisors. The sheriff may appoint one or more deputy sheriffs at his pleasure. MCLA § 51.70 (Stat Ann 1961 Rev § 5.863). The Sheriff of Wayne County is required to appoint an undersheriff, and such number of deputy sheriffs, clerks and employees as may be fixed by the board of supervisors. MCLA § 51.242 (Stat Ann 1971 Cum Supp § 5.892). The board of supervisors may provide that deputy sheriffs serving civil process only receive fees in lieu of salary.

Deputy sheriffs are part of the classified county civil service.

JUDICIAL CLERKS

MCLA § 600.565 (Stat Ann 1962 Rev § 27A.565) provides that in counties having more than 1,000,000 population, the Governor may upon recommendation of the circuit judges, appoint three or more judicial clerks, who shall,

"(a) perform such duties as the circuit judges prescribe in connection with the court's business;

"(b) receive an annual salary from the county, payable in monthly installments,

"(i) in accordance with the official salary plan of the county where the county has adopted civil service under Act No. 370 of the Public Acts of 1941, as

amended, being sections 38.401 to 38.428, inclusive, of the Compiled Laws of 1948;

"(ii) as fixed and determined by the board of supervisors for the county where the county has not adopted civil service. The board of supervisors may increase the judicial clerk's salary at any regular October session."

Prior to the amendment of this statute in 1931 by PA 298, the work of such judicial clerks was described as "assigning and arranging the business of said courts." The 1931 amendment made the duties broader.

### JUDICIAL ASSISTANT

MCLA § 600.1481 (Stat Ann 1962 Rev § 27A.1481) provides for the appointment of a judicial assistant in courts of record having ten or more judges. That act calls for the appointment to be made by the judges, with a certificate of appointment to be issued by the Governor. The judicial assistant is declared to be a public officer, and not subject to civil service. Removal is by the Governor, upon recommendation of the judges.

In light of art 6, § 27, Const 1963, prohibiting circuit judges from making appointments to public office except as provided in the constitution, and in the light of the procedure described in the statute, the role of the judges is more properly that of recommending to the Governor for his appointment.

The judicial assistant acts under the direction of the judges, and receives his or her compensation from the county. Compensation is "fixed by the recommending judges within the sum appropriated therefor by * * * [the board of supervisors] * * * ."

In the prior opinion in this case, 383 Mich 10, we declined to consider the statutory authority of the

judges to employ a judicial assistant, holding rather that the circuit court had inherent authority to employ an assistant of the type described in the act. The assistant who had been employed by the court was ultimately paid by the county after leaving the court's service.

This statute will be treated further in another section of this opinion.

### Law Research Clerks

MCLA § 600.1471 (Stat Ann 1962 Rev § 27A.1471) authorizes circuit courts to employ a law clerk for each circuit judge. These clerkships are for a period of one year, renewable for an additional year. The law research clerk is to serve at the pleasure of the circuit judge, and to perform research duties and prepare legal memoranda at the direction of the judge.

His compensation is paid by the county, and fixed by the court. Like the judicial assistant, that compensation is to be "within the sum appropriated therefor by the   *   *   *   .[board of supervisors] *   *   *   ."

At present, Wayne Circuit Court has seven law clerks. They are not asssigned to specific circuit judges but perform their duties under the direction of the presiding judge, as provided by statute.

This statute will also be treated later.

### Marriage Counsellor

There is established in the Third Judicial Circuit a marriage counselling service under PA 1964, No 155 (MCLA § 551.331 *et seq.*; Stat Ann 1971 Cum Supp § 25.123[1] *et seq.*) That service is declared by statute to be an arm of the circuit court.

The director of the marriage counselling service is employed by the circuit judges and he serves at

their pleasure. His compensation is established by the board of supervisors, and he is paid by the county.

The director, in turn, has authority to employ professional and clerical staff with the approval of the judges and within appropriations made by the board of supervisors. There is specific provision in the statute for the board of supervisors to appropriate moneys for the establishment and maintenance of the service.

## FRIEND OF THE COURT

PA 1919, No 412 (MCLA § 552.251 *et seq.*; Stat Ann 1957 Rev § 25.171 *et seq.*), makes it the duty of the circuit judges to recommend to the Governor the appointment of the friend of the court. His duties relate to divorce cases; he is generally charged with the collection of support and maintenance payments for the benefit of minor children.

The friend of the court may be removed by the Governor, upon certification by the judges. His compensation is fixed by the board of supervisors, and he is paid from county funds.

No specific provision appears in the friend of the court statute governing employment or compensation for assistants or staff.

## PROBATION OFFICERS

MCLA § 771.7 (Stat Ann 1971 Cum Supp § 28.1137) provides that the circuit court may recommend a chief probation officer and assistant probation officers. Appointment is made by the Michigan Corrections Commission. Compensation is fixed by the board of supervisors.

MCLA § 771.8 (Stat Ann 1954 Rev § 28.1138) calls for notice of the appointment of a probation officer

to be given the judges by the Corrections Commission.

Removal is by the Corrections Commission for neglect, misconduct or incompetence. The commission is required to remove officers where grounds for removal are certified by the judges after full hearing.

Probation officers appointed under MCLA § 771.7 (Stat Ann 1971 Cum Supp § 28.1137) are paid by the county and are excluded from county civil service.

Probation officers are required to make presentence investigations of those convicted of crimes, and to file such reports with the court and with the corrections department. Additionally, probation officers are required to supervise persons placed on probation under such regulations as may be prescribed by the court and the assistant director of corrections in charge of probation.

The assistant director of corrections in charge of probation exercises general supervision over the work of probation officers throughout the state. MCLA § 771.18 (Stat Ann 1954 Rev § 28.1147).

## COUNTY APPROPRIATIONS

Const 1963, art 9, § 17, provides that no money shall be paid out of the state treasury except in pursuance of appropriations made by law.

An appropriation is a legislative enactment. Const 1963, art 4, § 31.

In establishing that no money is to be paid out of the state treasury except in pursuance of appropriation, our constitution requires that legislative judgment be exercised in advance of the expenditure of state funds.

Article 9, § 22, requires the legislature to provide a method for claims to be processed against the state.

That method is embodied in the Court of Claims Act, MCLA §§ 600.6401–600.6475 (Stat Ann 1962 Rev §§ 27A.6401–27A.6475). With respect to state funds, however, even the Court of Claims Act makes no provision for payment of claims against the state where no appropriation has been made. MCLA § 600.6458 (Stat Ann 1962 Rev § 27A.6458) requires certification to the legislature of such claims and payment thereof "as soon as moneys are available for such purpose."

Unlike state government, no provision for prior appropriation appears in the statutes controlling the duties of the county treasurer. MCLA § 48.40 (Stat Ann 1961 Rev § 5.686) makes it the duty of the county treasurer to pay out county funds,

"only on the order of the board of supervisors * * * except where special provision for the payment thereof is, or shall be otherwise made by law."

In Wayne County, the treasurer's obligation is fixed by MCLA § 47.56 (Stat Ann 1961 Rev § 5.606), which requires payment of claims on warrant from the Board of Auditors.

MCLA § 600.6093 (Stat Ann 1962 Rev § 27A.6093) governs the procedure for enforcement of a judgment against the county.

"Sec. 6093.

*     *     *

"(3) When judgment is recovered against any county or the board of supervisors or any county officer in an action prosecuted by or against him in his name of office, the same, unless reversed, shall be levied and collected as other county charges, and when so collected shall be paid by the county treas-

urer to the person to whom the same shall have been adjudged, upon the delivery of a proper voucher therefor."

In *Hammond* v. *Place* (1898), 116 Mich 628, we held that an assessment of taxes for the payment of a judgment against a municipal corporation was valid even where the effect thereof was to exceed the tax limitation contained in the charter. The quotation from Justice COOLEY's work on taxation contained in *Hammond* at page 633, suggests that a contrary holding would raise serious questions of impairment of the obligation of contracts.

Excepted from the 15 mill limitation in our Constitution of 1963 were "bonds or other evidences of indebtedness." The final judgment of a court is clearly an evidence of indebtedness.

Counties have been given considerable legislative power.

MCLA § 46.11 (Stat Ann 1971 Cum Supp § 5.331) provides that boards of supervisors are authorized to pass such laws, regulations and ordinances relating to purely county affairs as they may see fit, but which shall not be opposed to the general laws of this state.

The general grant of legislative power to counties contained in MCLA § 46.11 (Stat Ann 1971 Cum Supp § 5.331) specifically excludes "any jurisdiction over the circuit court."

Within the limits of its delegated legislative power, counties may pass appropriations for the expenditure of county funds for county purposes.

But in the scheme of county government, the legislature has not seen fit to delegate that ultimate power of the purse by which a legislative judgment must be made in advance of payment of any and all public funds.

It is doubted that any attempt to do so would be valid, for the constitution places the legislative power of the state in the senate and house of representatives. Const 1963, art 4, § 1.

Therefore, while appropriation is prerequisite to expenditure at the state level, counties are obligated to pay all proper charges against them, whether those charges are fixed by law or incurred by contracts made in pursuance of statutory or constitutional authority.

Further, since counties have no general legislative jurisdiction over the circuit court, they are without authority, in the absence of special statutes, to enact appropriations for the operation of the circuit court. Except where statutes authorize county appropriations, no county legislative judgment may be exercised with respect to funding circuit court functions. The county merely pays the proper statutory and constitutional charges made upon it by reason of circuit court needs.

In the case of the marriage counselling service, for example, MCLA § 551.332 (Stat Ann 1971 Cum Supp § 25.123[2]) expressly gives the county board of supervisors authority to "appropriate such sums of money as may be deemed sufficient by the board of supervisors for the establishment and maintenance of such service."

It follows that the county has legislative judgment to exercise with respect to the operation of the marriage counselling service. The county can increase or decrease the service as the need shall appear and the funds are available.

The employment of staff for the marriage counselling service must be made " * * * within the funds appropriated by the board or boards of supervisors * * * ."

LAW CLERKS AND JUDICIAL ASSISTANTS RE-VISITED

Unlike the marriage counselling service act, the statute governing research law clerks does not grant to the county board of supervisors in express terms any power to appropriate money for the employment of law clerks.

The only mention of appropriation in that statute, MCLA § 600.1471 (Stat Ann 1962 Rev § 27A-.1471), comes in connection with fixing the compensation of the law clerks. It states:

"(3) The compensation of law clerks shall be fixed by the judges of the court within the sum appropriated therefor by the legislative body or bodies of the governmental unit or units, other than the state of Michigan, which pays the compensation of such judges. In case 2 or more governmental units contribute to the compensation of such judges, the salary of the law clerk shall be paid by the unit, other than the state of Michigan, which contributes the greater portion of such salaries, unless the legislative bodies of the respective units elect to share in paying the compensation of such law clerk."

There being no authority in the county to appropriate money to employ law clerks, the only possible meaning of the phrase "within the sum appropriated" is to require approval or concurrence by the county board of supervisors on the question of the amount of the clerk's compensation.

The legislative judgment that the court may employ law clerks for each of the judges was made by the state legislature. The number of clerks to be employed is not within the jurisdiction of the county board to determine.

Having exercised the limited legislative power which the statute confers upon the county legislative body—to approve the *amount* of a clerk's compensation—the county's only further role in the mat-

ter is entirely administrative. It simply pays the established compensation to each law clerk employed by the court.

A similar interpretation must be given MCLA § 600.1481 (Stat Ann 1962 Rev § 27A.1481) respecting the judicial assistant. When a judicial assistant has been appointed by the Governor, upon recommendation of the judges, the county has the limited legislative function of approving the amount of his compensation as fixed by the recommending judges.

The legislative decision upon the question of whether or not a judicial assistant shall be employed is not for the county to make. The state legislature has already made it. The county cannot foil the legislative action of the state.

This Court said in *People, ex rel. Schmittdiel,* v. *Auditors of Wayne County* (1865), 13 Mich 233:

"It would be anomalous, to say the least, if the county authorities could control the policy of the state within their limits, by regulating or practically withholding the means of employing needful agencies." P 237.

### OTHER EMPLOYEES

The third circuit consists of Wayne County.

Wayne County has a board of auditors, whose powers and duties are fixed by law. MCLA § 47.51 (Stat Ann 1961 Rev § 5.601). The Board of Supervisors of Wayne County may not exercise the powers conferred upon the board of auditors. MCLA § 47.59 (Stat Ann 1961 Rev § 5.609).

Many of the administrative matters relating to the operation of the Wayne Circuit Court were formerly lodged by statute in the board of auditors.

Thus, MCLA § 47.58 (Stat Ann 1961 Rev § 5.608) provides:

"Second, To ascertain and report to the board of supervisors of said county, on or before the annual meeting of said board of supervisors, the amount of tax necessary to be raised therein for county purposes; such amount shall be separated into different funds, which shall be named or otherwise so described as to designate the several objects for which it is necessary to levy taxes;  *  *  *

"Seventh, To make all contracts and leases for county offices, court rooms and other buildings for the use of the county and provide the necessary heating and lighting of the same, procure the necessary furniture and fixtures for them and make all necessary repairs thereto:  *  *  *

"Eighth, To procure and furnish for the county offices and for the several courts all necessary books, stationery, blanks and printing;  *  *  * ."

Of special interest is this paragraph of MCLA § 47.58 (Stat Ann 1961 Rev § 5.608):

"Fifth, To determine the number of the clerks and assistants to be employed in the several county offices, and to fix the compensation of the deputies, clerks and assistants employed in the several county offices, and in the circuit, probate and justice's courts;  *  *  * ."

The particular wording of that statute shows that the auditors are not authorized to determine the *number* of clerks and assistants in the circuit and other courts. As to persons employed in the several county offices, the auditors were empowered to determine the number and fix compensation. As to court employees, the power was only to fix compensation.

As to the fixing of compensation, this power of the board of auditors has been greatly modified by other legislation. The county civil service act, made applicable in Wayne County, MCLA § 38.401 *et seq.* (Stat Ann 1961 Rev § 5.1191[1] *et seq.*), placed the duty of fixing salaries in the classified service upon

the civil service commission, with approval of the board of supervisors.    MCLA § 38.412 (Stat Ann 1971 Cum Supp § 5.1191[12]).

More recently, the enactment of MCLA § 423.201 *et seq.* (Stat Ann 1968 Rev § 17.455[1] *et seq.*), governing the relations of public employers and public employees, has worked a further shift in the responsibility to fix compensation for public employees.

In *Wayne County Civil Service Commission* v. *Board of Supervisors,* 384 Mich 363, decided March 1, 1971, we held a partial repeal of the county civil service act was effected by the enactment of MCLA § 423.201 *et seq.* (Stat Ann 1968 Rev § 17.455[1] *et* seq.), to the extent of the repugnancy between the two statutes.

PA 1947, No 336, as amended by PA 1965, No 379, is sometimes called the public employee relations act.    It provides in part as follows:

"Sec. 15.    A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives.    For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or, resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession."

It follows that whenever the provisions of the public employee relations act come into play, the public employer is required to confer in good faith

with respect to wages, hours and other terms and conditions of employment, and it is the public employer which enters into a written contract or collective bargaining agreement.

As to county employees generally, we held in *Wayne County Civil Service Commission, supra,* that the county board of supervisors was the proper public employer to bargain on behalf of the county.

Because the Wayne County Road Commission was specially authorized by statute to employ its necessary employees and servants, and because the road commission was constitutionally authorized and separately established by law, we held that the road commission and not the supervisors was the employer obligated to bargain with its employees.

### The Circuit Court as a Public Employer

In *Judges of the 74th Judicial District* v. *Bay County* (1971), 385 Mich 710, we held that the Judicial District Court is the public employer of its employees within the meaning of the public employee relations act.

Because of the myriad of statutes on the subject of the circuit courts, we feel compelled to delineate the extent to which the circuit court is also to be regarded as a public employer within the meaning of MCLA § 423.215 (Stat Ann 1968 Rev § 17.455[15]).

The following persons are employees of the circuit court, as to whom the circuit court is the public employer:

(1) deputy circuit court clerks, including the chief deputy circuit court clerk, appointed pursuant to MCLA § 600.579 (Stat Ann 1971 Cum Supp § 27A-.579).

(2) court stenographers, appointed under MCLA § 600.1101 (Stat Ann 1962 Rev § 27A.1101).

(3) judicial clerks, employed under MCLA § 600-.565 (Stat Ann 1962 Rev § 27A.565).

(4) judicial assistants appointed under MCLA § 600.1481 (Stat Ann 1962 Rev § 27A.1481).

(5) law research clerks, employed under MCLA § 600.1471 (Stat Ann 1962 Rev § 27A.1471).

(6) the director of marriage counselling, and the professional and clerical staff of the marriage counselling service under MCLA § 551.331 (Stat Ann 1971 Cum Supp § 25.123[1]).

(7) the friend of the court, appointed under MCLA § 552.251 (Stat Ann 1957 Rev § 25.171).

(8) probation officers, including the chief probation officer, appointed pursuant to MCLA § 771.7 (Stat Ann 1971 Cum Supp § 28.1137).

(9) all other administrators, clerks, stenographers, secretaries, typists and employees working under the direction and control of the judges of the circuit court or the presiding judge thereof, or working under the direction and control of any of the clerks, assistants, or officers mentioned above.

## CIRCUIT COURT EMPLOYEES
### DETERMINATION OF NUMBER AND KIND

As heretofore illustrated, the number and types of employees engaged in the administration of the circuit court largely depends upon statutory authority pronounced by the state legislature.

In addition to the various clerks, assistants and officers whose employment is authorized or required by law, a number of other employees, clerical assistants, typists, and the like are required for the operation of the court.

As previously pointed out, the board of county auditors has no statutory authority to determine the number of such employees, neither has the board of

supervisors the power to determine by appropriation in gross, the number of such employees.

To the extent that it does not impair the constitutional functioning of the courts, the state legislature has the authority to determine the proper number of such employees. In the absence of specific statutory declaration, it devolves upon the circuit court itself to specify the number of employees needed.

## Mandamus

Mandamus will lie to compel a county to pay proper charges against it.

Long ago, this Court stated in *People, ex rel Bristow,* v. *Supervisors of Macomb County* (1855), 3 Mich 475, p 481:

"If, in these and the like cases, boards of supervisors cannot be reached and compelled, by mandamus, to perform their official duty, and especially such duty as is expressly and unconditionally imposed upon them by statute, then truly they are invested with arbitrary, despotic power, and honest claimants left entirely remediless; for the law in such cases has provided no other remedy for the enforcement of their claims. But this cannot be, nor is the law so entirely defective, or so absolutely arbitrary and unjust. A mandamus will lie, in such cases, and is the legal and appropriate remedy, the law having provided no other."

Justice Campbell, writing for the Court in *People, ex rel. Schmittdiel,* v. *Auditors of Wayne County,* (1865), 13 Mich 233, at page 235, stated:

"Upon an examination of our state polity, before and since the adoption of the new constitution, it will be found that many charges have been laid on counties, as such, where no benefit accrued to them in their corporate capacity, but where it was, doubtless, deemed a fair way of apportioning the public

expenses. It would be difficult to perceive what advantage a county derives from the civil proceedings between parties in the courts of justice, or why, if there be any advantage, the services of the judge, as well as of jurors and witnesses should not be deemed services rendered for the counties where they respectively sit. It is an advantage to have justice accessible to all, and to have evil-doers punished, but acts which do not affect the interests and security of the public at large have not usually been classed as crimes (although the distinctions are somewhat arbitrary), and the advantages in all these cases result to the community generally. We feel very sensibly the difficulty of classifying the services rendered to counties, as contradistinguished from those which, although charged on them, are not rendered for their peculiar benefit; but the practical construction has, from the beginning, made judicial proceedings an exception, or, rather, regarded them as not coming within the former class."

Mandamus issued in *Gillespie* v. *Board of Auditors of Oakland County* (1934), 267 Mich 483, to compel payment of judges salaries. Mandamus issued in *Holland* v. *Adams* (1934), 269 Mich 371, for a similar purpose.

## RELIEF

Mandamus will issue in this cause upon application by the plaintiffs directing the County of Wayne to pay the appropriate compensation as fixed in conformity to the statutes and to this opinion of all employees of the circuit court established by the law or needed in the operation of the circuit court, upon certification of the Presiding Judge of the Third Judicial Circuit.

ADAMS, J. (*dissenting*). I agree with Justice T. E. BRENNAN that much of the problem stems from the existing hodgepodge of statutes dealing with court personnel. A major legislative overhaul is indi-

cated. Failing such, the courts, and this Court in particular, should assume control of all court personnel in accordance with the inherent judicial power lodged in one court of justice.

I agree with Justice T. E. Brennan that the circuit court is the public employer of its employees with authority to act in accordance with MCLA § 423.201 *et seq.* (Stat Ann 1968 Rev § 17.455[1] *et seq.*). That act provides that a public employer shall bargain collectively with the representatives of its employees. However, I do not find anything in that act dealing with the appropriation of funds to pay employees or that would authorize an action of mandamus to compel payment. In determining whether such a writ should issue, I would apply the standard for the use of the inherent power of the courts of which I wrote in 383 Mich 10, at p 43.

The danger of the issuance of such a writ to force payment of compensation "of all employees of the circuit court established by the law or needed in the operation of the circuit court" is that it disregards the realities of a county's financial resources.

The problem is cogently stated in the concurring opinion of Justice Jones in *Commonwealth, ex rel. Carroll,* v. *Tate* (1971), 442 Pa 45, 58, 59 (274 A2d 193), in which case he wrote:

"While I concur in the result achieved by the majority, I must note my disagreement with the precedent thereby established.

"At first glance, the majority's statement—'the deplorable financial conditions in Philadelphia must yield to the Constitutional mandate that the Judiciary shall be free and independent and able to provide an efficient and effective system of Justice' —would appear most commendable. Stated differently, the majority essentially holds that whatever amount is 'reasonably necessary' for judicial administration must be awarded *even though the City may have no available funds.* With this proposition I cannot agree; in my opinion, the computation of a

'reasonably necessary' amount must consider the financial resources available to the city. However, the record demonstrates that these additional funds have already been set aside and that the City of Philadelphia will not be forced into 'involuntary bankruptcy.' It is for this fact that I am able to concur.

"The majority fails to realize the full import of its standard. If this Court holds that funds must be afforded the Judiciary if 'reasonably necessary,' could a future majority, while stressing the fundamental co-equality of all three branches of government, logically deny this same standard to the Executive branch of government (the Legislative branch already controlling the power of the purse)? Unless that majority is prepared to nominate the Judiciary for a *primus inter pares* status, this question must be answered in the negative. Although the Executive, unlike the Judiciary, is ofttimes able to resolve these difficulties in the political arena, I would be most reluctant to rely on the mercurial world of politics as the Executive's only recourse.

"Predictably, a future City Council could then be swamped by 'reasonably necessary' requests from the Police Department, Sanitation Department, Recreation Department and all other departments of the Executive branch. Unquestionably more money would enable each of these departments to better serve the community. However, the sum of these 'reasonably necessary' requests may very well, in some future instance, exceed a municipality's available revenue resources. Projecting the present majority's original premise and *realizing all three branches operate in an imperfect world,* I must take issue with the majority's overly optimistic precedent.

"Certainly taxes could be increased to cover any impending deficit. Certainly those of us in the Judicial branch of government must zealously defend our independence. Perhaps my prediction is a bit too gloomy. However, I would all too eagerly em-

brace the majority if only it would recognize that what is 'reasonably necessary' cannot fail to consider the financial plight of the city."

In the absence of a showing that employees are essential to assure the existence or basic functioning of the court, I vote to deny the writ.