LIVINGSTON COUNTY v LIVINGSTON CIRCUIT JUDGE

Docket No. 55513. Argued December 12, 1974 (Calendar No. 8).— Decided January 21, 1975.

The Michigan Employment Relations Commission certified Michigan Council 55, AFSCME, AFL-CIO, as a bargaining representative for a unit of district and circuit court employees in Livingston County. The bargaining representative, employees, and representatives of the judiciary then bargained over a contract. During the bargaining a representative of the county Board of Commissioners was excluded from the bargaining room. The bargaining parties arrived at a contract and the Livingston Circuit Court, Paul R. Mahinske, J., issued an administrative order implementing the contract and submitted the order to the Court Administrator for approval. Livingston County and its Board of Commissioners filed a complaint in the Court of Appeals for superintending control against the circuit judge. The Court of Appeals, Quinn, P. J., and McGregor and Bronson, JJ., granted the motion of the American Federation of State, County and Municipal Employees, Council 55, to intervene as a defendant and dismissed plaintiffs' complaint for

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur 2d, Labor and Labor Relations §§ 1050–1054.
[2–4] 48 Am Jur 2d, Labor and Labor Relations §§ 273 *et seq.;* 1198 *et seq.*
[5, 6, 10, 13, 14, 18] 48 Am Jur 2d, Labor and Labor Relations § 1191.
[7, 11] 20 Am Jur 2d, Courts §§ 4, 102.
[8, 9, 15–17] 20 Am Jur 2d, Courts §§ 78, 79.
[12] 73 Am Jur 2d, Statutes § 272 *et seq.*

superintending control (Docket No. 17716). Plaintiffs appeal, arguing that separation of powers has been violated and that due process and equal protection have been denied because they have not been afforded a neutral forum in which to determine whether or not the provisions of the contract are reasonable and necessary. *Held:*

1. The bargaining parties used basically correct procedures, but *no conclusion is reached as to the reasonableness or the* necessity of the contractual provisions.

2. The bargaining process used does not violate the doctrine of separation of powers.

3. Review of the contract for reasonableness is initially by submission to the Court Administrator for approval, and an adversary proceeding for review of reasonableness and necessity, if it appears that the budget reflecting the contract will exceed the total appropriation, is then available by an action for injunctive relief in the circuit court of the county before a disinterested judge, with appellate review by application for leave to appeal directly to the Supreme Court.

4. The Court of Appeals was correct in dismissing plaintiffs' complaint for superintending control, and is affirmed.

Levin, J., joined by T. G. Kavanagh, C. J., dissented on the ground that:

The issue is one of statutory construction: who would the Legislature designate as the public employer under the Public Employees Relations Act had the matter come to mind. In the opinion of the dissenters it would have designated the county, not the courts, as to circuit and probate courts.

1. The circuit and probate courts do not have the same statutory authority to fix employees' compensation that district courts have. While the "public employer" of district court employees, obligated by statute to bargain with the employees, is the district court as held in *Judges of the 74th Judicial District v Bay County,* 385 Mich 710; 190 NW2d 219 (1971), the "public employer" of circuit and probate court employees is the county, not the courts.

2. The "inherent power" of the courts to require the other branches of government to fund their needs extends only to situations of urgency or emergency, not to routine budgetary needs under a collective bargaining agreement.

3. The review procedure established by Administrative Order 1971-6 was intended as a constraint on the improvident exercise by judges of inherent power, and was not designed to review collective bargaining agreements.

4. The Legislature has always provided a limit on the amount the courts may spend in hiring employees and fixing compensation and the limit is generally expressed by the words "within amounts appropriated". Courts do not possess inherent powers to appropriate money or require expenditures for what they determine is reasonable, but only for true emergencies, and may not properly assume financial obligations in a collective bargaining agreement greater than the amount appropriated by a legislative body.

### OPINION OF THE COURT

1. COURTS—LABOR RELATIONS—COLLECTIVE BARGAINING—COURT ADMINISTRATOR—CONSTITUTIONAL LAW—SEPARATION OF POWERS.

   The bargaining parties used basically correct procedures where a bargaining representative for a unit of district and circuit court employees, the employees, and representatives of the judiciary engaged in bargaining over a contract, the bargaining parties arrived at a contract, and the circuit judge issued an administrative order implementing the contract and submitted the order to the Court Administrator for approval; the bargaining process used does not violate the doctrine of separation of powers.

2. COURTS—LABOR RELATIONS—COLLECTIVE BARGAINING—COUNTIES—REPRESENTATIVE.

   The best practice in collective bargaining between employees of district and circuit courts and the local judiciary is to invite a representative of the county Board of Commissioners to appear at bargaining sessions, not to bargain, but to present relevant data about other county employees.

3. COURTS—LABOR RELATIONS—COLLECTIVE BARGAINING—CONTRACTS —REVIEW—COURT ADMINISTRATOR.

   Review for approval by the Court Administrator of an administrative order issued by a circuit judge implementing a collective bargaining contract between a local judiciary and its employees is a step in insuring the reasonableness and necessity of the contractual provisions, and participation in the review by representatives of the county Board of Commissioners and discussion point by point and clause by clause was contemplated by the Administrative Order of the Supreme Court providing for review (Administrative Order 1971–6).

4. Courts—Labor Relations—Collective Bargaining—Contracts
   —Counties—Review.

    A county Board of Commissioners which wants an adversary proceeding in public view, on the record, to test the reasonableness and necessity of a collective bargaining contract between a local judiciary and its employees after the contract has been implemented by an administrative order of a circuit judge approved by the Court Administrator, if it appears that the budget reflecting the contract will exceed the total appropriation, may have such review in an action for injunctive relief in the circuit court of their own county, heard by a disinterested judge, with appellate review by application for leave to appeal directly to the Supreme Court.

### Dissenting Opinion

### T. G. Kavanagh, C. J., and Levin, J.

5. Labor Relations—Statutes—Construction—"Public Employer".

    *The question on review of a collective bargaining agreement between court employees and a county court system is whether the court or the county is the "public employer" of certain persons who perform services for the Livingston County Circuit Court, Probate Court and District Court, and is one of statutory construction of the Public Employment Relations Act (MCLA 423.201 et seq.).*

6. Labor Relations—Counties—Courts—"Public Employer".

    *Livingston County is the public employer, within the meaning of the Public Employment Relations Act, of employees who perform services for the circuit and probate courts of that county; the district court is the public employer of certain persons performing services for that court.*

7. Courts—Powers—Employees—Appointment—Compensation.

    *While circuit courts have the statutory authority to appoint and fix the compensation of a few specified employees, within amounts appropriated therefor by the county, that statutory authority, in contrast with the statutory authority of the district court, does not extend to most circuit court employees; the probate court has no statutory authority to fix the compensation of any court employee.*

8. Courts—Inherent Power—Budgetary Needs.

    *The inherent power in the judiciary to determine needs of the courts and to require the other branches of government to fund*

*those needs may be invoked when a situation of "urgency" or "emergency" threatens the ability of the judiciary to function serviceably as a co-equal branch of government, not in support of routine budgeting; a new collective bargaining agreement ordinarily creates no "urgency" or "emergency".*

9. COURTS—EMERGENCY—INHERENT POWER—COLLECTIVE BARGAINING AGREEMENT.

*An "emergency", justifying the invocation of inherent power of a court, may result if a public employer is unable or unwilling to offer court employees compensation and benefits sufficient to retain their services or to obtain the services of competent replacement or additional personnel.*

10. LABOR RELATIONS—COURTS—"PUBLIC EMPLOYER".

*In ascertaining the public employer of persons who perform services for the circuit court and probate courts, competing statutes must be considered: the Public Employment Relations Act secures to public employees the right of collective bargaining, and there are general and specific statutes authorizing the county, and in some instances the courts, to appoint and fix the compensation of public employees who perform services for the courts.*

11. COURTS—EMPLOYEES—COMPENSATION—APPROPRIATIONS.

*The Legislature has not authorized the circuit court or the probate court, in contrast with the district court, to appoint employees and fix their compensation within the appropriations provided by the governing body of the county; such authority as has been conferred on circuit judges to fix the compensation of specified judicial employees has been limited to the amount appropriated therefor for the specified employees by the board of commissioners, and line-item budgeting of the circuit and probate courts is contemplated by the statutes.*

12. STATUTES—INTERPRETATION—LEGISLATIVE INTENT.

*The ascertainment of legislative intent when there is no evidentiary or other reasonably authoritative guide to the meaning or purpose of the legislators requires the courts to guess what the Legislature would have intended on a point not present to its mind, if the point had been present.*

13. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—"PUBLIC EMPLOYER"—LEGISLATIVE INTENT.

*The absence of a definition of, or a procedure for determining, a "public employer" in the Public Employment Relations Act requires the Court to guess whether the Legislature that en-*

*acted it, had the point come to attention, would have desig-nated the courts or the county board of commissioners as the public employer of circuit and probate court employees (MCLA 423.201 et seq.).*

14. LABOR RELATIONS—"PUBLIC EMPLOYER"—LEGISLATIVE INTENT.

*The statutory pattern by which the compensation of most circuit and probate court employees is determined by the county board of commissioners or board of auditors, such authority as has been conferred on circuit judges to fix the compensation of specified employees has been limited to the amount appropri-ated therefor by the county board of commissioners, and line-item budgeting is contemplated for circuit and probate courts, the fact that local court employees are not covered by separate judicial retirement programs but share in others, the limitation of the inherent power of courts to mandating expenditures in the minimum amounts necessary to hire and retain competent personnel, and the impossibility of collective bargaining when the negotiating public employer has no negotiating leeway because of the impecuniosity or attitude of the appropriating authority, all lead to the guess that the Legislature, had it considered the question in enacting the Public Employment Relations Act, would have designated the county board of commissioners, not the court, as the public employer of circuit and probate court employees to bargain collectively with them (MCLA 423.201 et seq.).*

15. COURTS—INHERENT POWER—ADMINISTRATIVE ORDER.

*The review procedure of the administrative order prohibiting any judge from ordering the expenditure of public funds for any judicially required purpose until the order had been submitted to the Court Administrator was established as a constraint on the improvident exercise by judges of the inherent power to promulgate orders in emergency situations, and was not de-signed to review collective bargaining agreements (Administra-tive Order 1971–6).*

16. COURTS—FINANCING—BUDGETING—EMERGENCY—INHERENT POWER.

*Any change in the method of financing or budgeting the judicial branch is a legislative, not a judicial, responsibility; however desirable or beneficial the sought-for change may be, it does not create an emergency justifying invocation of inherent power.*

17. COURTS—INHERENT POWER.

*Courts do not possess inherent power to appropriate money or*

*require expenditures for whatever needs the judge, the Court
Administrator, and the Supreme Court on review, determine
are reasonable; inherent power exists only for true emergen-
cies.*

18. LABOR RELATIONS—"PUBLIC EMPLOYER"—COURTS—COUNTIES.

*The public employer of circuit court and probate court employees
of Livingston County is the Board of Commissioners of that
county, and the 53rd District Court is the public employer of
district court employees; these employers should negotiate new
agreements with their employees.*

*Thomas Kizer, Jr.,* Prosecuting Attorney, for
plaintiffs.

*Stringari, Fritz, Kreger, Asher & Ahearn, P. C.,*
for defendant.

*Zwerdling, Maurer, Diggs & Papp,* for interve-
nor.

Amici Curiae:

*Freihoffer, Cook, Hecht, Oosterhouse & DeBoer,
P. C.* (by *George C. Cook* and *Janet T. Neff*).

*Aloysius J. Suchy,* Corporation Counsel, and
*David R. Kaplan,* Assistant Corporation Counsel,
for Wayne County.

*Foster, Lindemer, Swift & Collins, P. C.* (by
*David Vander Haagen*).

PER CURIAM. We granted leave to appeal, 391
Mich 781 (1974), to consider questions raised by
Livingston County's Board of Commissioners in
connection with the first collective bargaining con-
tract settled upon by a local judiciary and its
employees to be tested in this Court. We affirm
earlier decisions in deciding that the bargaining
parties basically utilized correct procedures, but

we reach no conclusion as to the reasonableness or necessity of the contractual provisions.

On September 22, 1972, the Michigan Employment Relations Commission (MERC) certified Michigan Council 55, AFSCME, AFL-CIO, as a bargaining representative for a unit of district and circuit court employees in Livingston County. No one has challenged the appropriateness of that unit in this Court.

The bargaining representative, employees, and representatives of the judiciary then engaged in bargaining over a contract. This was to be expected, and was correct, in light of this Court's decision in *Judges of the 74th Judicial District v Bay County,* 385 Mich 710; 190 NW2d 219 (1971). During bargaining, according to the complaint and answer filed in this cause, it appears that a representative of the Board of Commissioners was excluded from the bargaining room. The specific details of the reasoning behind such exclusion are not set forth. This Court believes the best practice, in general, especially at initial bargaining sessions, is for the local judiciary to invite a representative of the commissioners to appear personally at such sessions. The commissioners' representative cannot actively bargain, of course, but such representative may present relevant data as to other county employees, *e.g.,* wage levels for comparable jobs, provisions in other labor contracts, general county benefits, and county budget information.

The bargaining parties arrived at a contract on June 22, 1973. Circuit Judge Paul R. Mahinske issued an administrative order implementing the contract on July 16, 1973, and then on July 18, 1973, he submitted such order to the Court Administrator for approval, pursuant to this Court's Administrative Order No. 1971–6, 386 Mich xxix.

This Court affirms those actions as being correct. The order of July 16, 1973, might not in some cases be necessary, but if it is, then review by the Court Administrator becomes a step in insuring the reasonableness and necessity of the contractual provisions. It was conceded by appellants, at oral argument, that their representatives were invited to the Court Administrator's office for a presentation of the commissioners' views on the contract. But it appears that the commissioners did not participate in a point-by-point, clause-by-clause, discussion of the contract, as this Court hoped would be the case under Administrative Order 1971–6. The reason for such nonparticipation appears to lie with the judgment of the commissioners' representatives, and their decision does not aid their argument that they have been denied due process of law.

Appellants now advance two basic arguments: that separation of powers has been violated, and that due process and equal protection have been denied because they have not been afforded a neutral forum in which to determine whether or not the provisions of the contract are reasonable and necessary. But the bargaining process used here does not violate the explanation of separation of powers set forth in *Wayne Circuit Judges v Wayne County,* 386 Mich 1; 190 NW2d 228 (1971), *cert den* 405 US 923; 92 S Ct 961; 30 L Ed 2d 794 (1972), and *Commonwealth, ex rel Carroll, v Tate,* 442 Pa 45; 274 A2d 193 (1971), *cert den* 402 US 974; 91 S Ct 1665; 29 L Ed 2d 138 (1971), and we continue to adhere to those precedents.

The reasonableness and necessity of such contracts are subject to review in Michigan. We already have provided for an administrative check on reasonableness through Administrative Order

1971-6. In addition, once the Court Administrator has approved a contract the Board of Commissioners may institute adversary court proceedings to test the reasonableness and necessity of the contract if it appears that the budget reflecting the contract will exceed the total appropriation. The commissioners may file suit promptly for injunctive relief in circuit court in their own county. Since the purpose of such suit would be to enjoin an administrative order of a judge of that very county, the commissioners may seek designation by the Court Administrator of a disinterested judge to decide the case on its merits. In order to expedite the settlement of disputes over wages and working conditions, any appellate review of the decision of the circuit court shall be by direct application for leave to appeal to this Court, and no writ of mandamus shall lie under Administrative Order 1971-6 until such proceedings, promptly begun and diligently pursued, are terminated.

By such holding, this Court's intent is to afford the legislative body a neutral forum in which reasonableness and necessity may be determined after adversary hearings. This Court is aware that this procedure may prolong public employee collective bargaining, and thus may disappoint the union and its membership. This Court also is aware that the commissioners may claim that any proceeding presided over by a judge will not be a neutral forum, and thus the commissioners may also be disappointed. The Court reminds the parties, however, that the Legislature has based public employee collective bargaining in Michigan on an industrial model. Such a model contains inherent difficulties when the ultimate public employer, the voting public, has elected representatives to

three separate units in order to govern itself fairly.

The Court of Appeals was correct in dismissing plaintiffs-appellants' complaint for superintending control, and is affirmed, without prejudice to the filing by plaintiffs-appellants of an appropriate circuit court action within 20 days of the issuance of this opinion.

T. M. KAVANAGH, SWAINSON, WILLIAMS, M. S. COLEMAN, and J. W. Fitzgerald, JJ., concurred.

LEVIN, J. *(dissenting).* The question is whether the court or the county is the "public employer" of certain persons who perform services for the Livingston County Circuit Court, Probate Court and District Court.

The Public Employment Relations Act,[1] enacted in 1965, obliges a "public employer" to bargain collectively "with the representatives of its employees" and authorizes a public employer "to make and enter into collective bargaining agreements with such representatives".[2] Procedures are provided to determine the appropriate employee unit,[3] and, if necessary, to select the employees' bargaining representative.[4] However, neither a definition of nor procedure for determining the "public employer" is provided.

The question is one of statutory construction, or perhaps, in recognition of the complex legislative matrix, one of statutory extrapolation. The resolution of this question neither affects nor is affected

---

[1] 1965 PA 379; MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*

[2] MCLA 423.215; MSA 17.455(15).

[3] The MERC makes the decision. MCLA 423.213; MSA 17.455(13).

[4] Election supervised by the MERC. MCLA 423.212, 423.214; MSA 17.455(12), 14.455(14).

by the asserted inherent power of the court to require the expenditure of public funds.

The Livingston County Board of Commissioners challenges a collective bargaining agreement between the "Court System of Livingston County", as "public employer", and Livingston County Court Employees' Chapter of Local No. 2652, the bargaining representative of the employees of the "Court System".[5] The agreement recognizes the union and establishes wages, hours and fringe benefits.[6]

We would hold that Livingston County is the

[5] The circuit judge and probate judge of Livingston County and the 53rd District Court judges signed on behalf of the court system.

[6] The agreement covers the following job classifications:

| Level | Job Classification |
|---|---|
| 1 | File Clerk |
| 2 | Clerk Typist I |
| 3 | Clerk Typist II |
| 4 | Deputy Court Clerk I |
| | Traffic Clerk |
| | Small Claims Clerk |
| | Friend of the Court |
| 5 | Deputy Court Clerk II |
| | Juvenile Court |
| | Dist. Court Accountant |
| | Pleading Examiner |
| 6 | Deputy Court Clerk III |
| | Grant. Admin. |
| | District Court Civil |
| | Assignment Circuit |
| 7 | Deputy Court Clerk IV |
| | Financial Officer F/C |
| | Deputy Prob. Register |
| 8 | District Court Recorder |
| | Juvenile Register |
| | Admin. Dist. Ct. Crim. |
| | Circuit Court Admin. |
| 12 | Assistant F/C |
| | Probate Register |
| 15 | Probation Officer I |
| 16 | Probation Officer II |
| | Cir. Court Reporter |
| 17 | County Juvenile Officer |

public employer of the employees who perform services for the circuit and probate courts of that county. We adhere to this Court's decision in *Judges of the 74th Judicial District v Bay County,* 385 Mich 710; 190 NW2d 219 (1971), holding, in effect, that the district court is the public employer of certain persons performing services for that court.

The basis for this distinction is that the district court act,[7] as construed in *Bay County,* obliges the district control unit to appropriate a lump sum for the compensation of district court employees and empowers district judges to decide how that sum shall be expended. The Legislature has not required counties to appropriate lump sums for the operation of the circuit or probate courts.

I

In *Bay County,* this Court affirmed a circuit court decision that certain persons performing services for a district court were employees of that court and not of the county.[8] *Bay County* does not, as has been asserted, hold that every court or the One Court of Justice[9] is the "public employer" under the PERA of all court employees.

*Bay County* was predicated on the statutory authority of the district court: "Except as otherwise provided, the judges of the district court *shall appoint the employees thereof and fix their com-*

[7] MCLA 600.8101 *et seq.;* MSA 27A.8101 *et seq.*

[8] "Employes of the district court are employees of the judicial district, an administration unit of the state's one district court, which in turn is a subdivision of Michigan's one court of justice. They are not employees of the county, city or other district control unit, even though they are paid by the district control unit. MCLA § 600.8271(2) (Stat Ann 1971 Cum Supp § 27A.8271[2])." *Judges of the 74th Judicial District v Bay County,* 385 Mich 710, 723; 190 NW2d 219 (1971).

[9] Const 1963, art 6, § 1.

*pensation* within appropriations provided by the governing body of each district control unit."[10] (Emphasis supplied.)

While circuit courts have the statutory authority to appoint and fix the compensation of a few specified employees, within amounts appropriated therefor by the county, that statutory authority, in contrast with the statutory authority of the district court, does not extend to most circuit court employees.[11] The probate court has no statutory authority to fix the compensation of any court employee.[12]

## II

Simultaneously with *Bay County*, this Court upheld a circuit court decision authorizing a writ of mandamus directing Wayne County to provide funds to hire law clerks, a judicial assistant and additional probation officers. *Wayne Circuit Judges v Wayne County (On Rehearing)*, 386 Mich 1, 9; 190 NW2d 228 (1971). The Court "ordered that the DETHMERS-BLACK opinion of 1969 [on original submission][13] be and become the opinion of the Court on rehearing".[14]

---

[10] MCLA 600.8271(1); MSA 27A.8271(1).

[11] *Cf. Bartkowiak v Wayne County*, 341 Mich 333; 67 NW2d 96 (1954); *Sabbe v Wayne County*, 322 Mich 501; 33 NW2d 921 (1948); *Bischoff v Wayne County*, 320 Mich 376; 31 NW2d 798 (1948). *See, also*, fn 23, *infra*.

[12] *See* last paragraph of fn 23.

[13] *Wayne Circuit Judges v Wayne County*, 383 Mich 10, 33–34; 172 NW2d 436 (1969). The DETHMERS-BLACK opinion referred to judicial precedents holding that a court charged with "the preclusive responsibility for efficient all-over-the-State judicial service, receives and accepts with that responsibility the inherent power and duty to take such action as is reasonably necessary to fulfill the constitutional obligation thus undertaken". The "essence" of this "inherent power" is "the power and responsibility of making continuantly sure that this 'one court of justice' (Const 1963, art 6, § 1) functions serviceably as a co-equal branch of Michigan's government". The Court has the "obligation of ascertainment of *critical judicial needs*" and "of determining the reasonableness or unreasonableness of the monetary amount

*Wayne Circuit Judges has been read by some as an assertion of "inherent power" in the judiciary to determine the day-to-day budgetary needs of the One Court of Justice and to require the other branches of government to fund those needs.*

The DETHMERS-BLACK analysis was in terms of *"critical* judicial needs", the *"urgency* of the situation", *"emergently* requires" (see fn 13), and does not support a claim that inherent power may be invoked in support of routine budgeting.

required to meet the *urgency of the situation".* As for the case at hand, "there is no dispute. The third circuit *emergently requires* the additional administrative help which in the trial court was adjudged. The reasonableness of the amounts asked for by the Wayne judges to provide such help is not contested, nor could it be." (Emphasis supplied.)

[14] The opinion on rehearing added, "that the judiciary, in Michigan's instance our 'one court of justice' (Const 1963, art 6, § 1), *must* stand foursquare in support of the constitutional doctrines which, most recently in the *Tate* case *[Commonwealth, ex rel Carroll, v Tate,* 442 Pa 45; 274 A2d 193; *cert den* 402 US 974 (1971)], were declared. 'Must' we have accented, just as the *Tate* Court stressed 'must possess' in this terse and pointed summary of constitutional necessity *(Tate* at p 52):

" 'Expressed in other words, the Judiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government. This principle has long been recognized, not only in this Commonwealth but also throughout our Nation.' " *Wayne Circuit Judges v Wayne County (On Rehearing),* 386 Mich 1, 8–9; 190 NW2d 228 (1971); *cert den* 405 US 923 (1972).

Only the author and one other justice signed the *Tate* opinion quoted in *Wayne Circuit Judges.* The other justices concurring in the result signed separate opinions.

It appears that the Supreme Court of Pennsylvania has retreated from the sweeping pronouncements in *Tate. See Glancey v Casey,* 447 Pa 77; 288 A2d 812 (1972). It has been suggested that the reason for the different results in the two cases is that in *Tate* the order was directed to a local unit of government while in *Glancey* the local judges sought to invoke inherent power against the state government. If so, this but illustrates that often a court can find in legislation adequate justification for an order on a local unit of government to fund judicial needs. *See* fn 20, *infra. See generally,* Comment, *State Court Assertion of Power to Determine and Demand Its Own Budget,* 120 U of Pa L Rev 1187, 1189, 1190 (1972).

Negotiation of a collective bargaining agreement should pose no threat to the ability of the judiciary to function "serviceably as a co-equal branch of Michigan's government". *Wayne Circuit Judges v Wayne County,* 383 Mich 10, 33; 172 NW2d 436 (1969). A new collective bargaining agreement ordinarily creates no "urgency" or "emergency".

Concededly, an "emergency", justifying the invocation of inherent power, may result if the public employer is unable or unwilling to offer court employees compensation and benefits sufficient to retain their services or obtain the services of competent replacement or additional personnel. It is not claimed that such an "emergency" prompted the actions of the Livingston County judges in this case nor has it been shown that the increases in wages and benefits in this contract are necessary to retain or obtain the services of the requisite number of competent personnel.

The fleeting reference to the inherent power of a court in *Bay County* neither requires nor justifies inherent power analysis of the question of who is the public employer of court employees. *Bay County* was predicated on statutory authority, not inherent power. The circuit court's statement in *Bay County* that district judges have "both the inherent and statutory right" to hire and fire personnel and to establish classifications and wages, was qualified by adding "within the appropriation of its district control unit and as may be fixed by statute".[15]

---

[15] The circuit court judgment, affirmed by this Court, provided:

"IT IS FURTHER ADJUDGED, that the 74th Judicial District Court, acting by and through its duly elected judges, has both the inherent and statutory right, in order to carry out the duties of the Court in the administration of justice, to hire, fire and direct and control its personnel, as described in plaintiffs' exhibit E of the District Court and in further conjunction therewith, to establish classifications for its personnel and relative wages therefor within the

This Court's statement in *Bay County* that its decision in that case was wholly "consonant with the constitutionally-prescribed functioning of the courts under inherent powers" as elucidated in the companion opinion in *Wayne Circuit Judges*,[16] *was, like the circuit court's statement, explicitly limited to the amount of funds appropriated by the district control unit:*

"If, however, the statute means what it says, *i.e.,* that the judges are to fix the compensation of their employees, then it follows that the language 'within appropriations' simply means that the judges' statutory power to employ personnel and fix their compensation *must be exercised within the overall limits of funds appropriated by the district control unit or units,* for the operation and maintenance of the district court." *Bay County, supra,* p 726. (Emphasis supplied.)

It has been noted that often "where a court has used sweeping language [regarding its inherent

appropriation of its district control unit and as may be fixed by statute." *Judges of the 74th Judicial District v Bay County, supra,* p 720.

In *Bay County,* this Court ruled that

(1) employees of the district court are employees of the judicial district, not of the county, city or other district control unit;

(2) in public employment, all-union agreements are not permitted;

(3) court employees are public employees within the meaning of the PERA and of Const 1963, art 4, § 48, authorizing the Legislature to enact laws providing for the resolution of disputes concerning public employees, except those in the state classified service;

(4) the district control unit may not line-item budget the district court. It is for the judges to decide within the appropriations provided how they are to be expended.

(5) the MERC has jurisdiction to entertain an unfair labor practice charge against a judge.

[16] "Our decision today is not only consistent with the manifest legislative intent but wholly consonant with the constitutionally prescribed functioning of the courts under inherent powers. See *Wayne Circuit Judges v Wayne County* (1971), 386 Mich 1 [184 NW2d 201]. Cognizant of these principles, we need not, nevertheless, interfere or abjure an otherwise valid legislative scheme." *Bay County, supra,* p 727.

power] when granting monies requested, its hold-
ing is more appropriately explained in terms of a
statutory grant of fiscal authority to a court, or a
specific state constitutional mandate[17] directed at
the judiciary".[18]

In *Wayne Circuit Judges,* statutes authorized
the hiring of law clerks, a judicial assistant[19] and,
as construed by the Court of Appeals,[20] the requi-
site number of probation officers.[21]

---

[17] *E.g.,* Const 1963, art 6, § 7.

[18] Note, *Judicial Financial Autonomy and Inherent Power,* 57 Cor-
nell L Rev 975, 982 (1972).

[19] The Revised Judicature Act authorizes the circuit court to employ
law clerks and, in a circuit having ten or more judges, to employ a
judicial assistant and to "fix" their compensation "within the sum
appropriated therefor" by the legislative body. MCLA 600.1471,
600.1481; MSA 27A.1471, 27A.1481.

[20] Where a statute authorizes the expenditure, there is no need to
rest decision on inherent power:

"The plaintiff judges have called our attention to decisions of other
State courts asserting the inherent power of the judiciary to require
the appropriation of funds when necessary to preserve the functioning
of the judicial system. There are Michigan cases which appear to
recognize that the judiciary possesses such power. However, some of
the cases concern incidental expenditures, relatively small in amount,
or expenditures for items which, customarily, had been paid as a
matter of course. In almost all the cases where the inherent power of
the judiciary to direct the appropriation of funds was recognized the
court also relied on legislation authorizing the expenditure directed
by the court.

"Similarly, here, while the plaintiff judges rest their case largely on
the claimed constitutionally-conferred power, the Michigan State
legislature has authorized the very expenditures which the plaintiff
circuit judges seek.

"It is a sound tradition that courts avoid unnecessary decision of
constitutional questions and, thus, if the court perceives a nonconsti-
tutional ground upon which decision can be rested it may decide the
case on that ground whether or not urged before it. '[A] court does not
grapple with a constitutional issue except as a last resort.' *Taylor v
Auditor General* (1960), 360 Mich 146, 154 [103 NW2d 769]." *Wayne
Circuit Judges v Wayne County,* 15 Mich App 713, 721–725; 167
NW2d 337 (1969).

[21] The Code of Criminal Procedure provides that the circuit court
may recommend assistant probation officers, who may be appointed
by the Michigan Corrections Commission, "who shall receive such
compensation as the boards of supervisors of the several counties
shall provide". MCLA 771.7; MSA 28.1137.

III

Prior to *Bay County* and *Wayne Circuit Judges,*
this Court, in *Wayne County Civil Service Com-
mission v Board of Supervisors,* 384 Mich 363, 367;
184 NW2d 201 (1971), addressed the question of
who is the public employer of all or particular
county employees, the Wayne County Civil Service
Commission, the Wayne County Board of Supervi-
sors (its Wayne County Labor Relations Board) or
the Wayne County Board of Road Commissioners:

"Two admittedly conflicting statutes compete in liti-
gious depth for jurisdiction over the process of collective
bargaining by Wayne County employees with their
employer (or employers)."

This Court determined that, with the exception
of the Wayne County Road Commission (found to
be the public employer of its employees) and ex-
cept as "[f]urther litigation may indeed be neces-
sary to settle the status of other such divisions or
classes", the Board of Supervisors of Wayne
County was the public employer of the employees
of Wayne County.[22]

In ascertaining the public employer of persons
who perform services for the circuit court and
probate court, we are similarly confronted with
competing statutes. The PERA secures to public
employees the right of collective bargaining. Addi-
tionally, there are general and specific statutes
authorizing the county, and ·in some instances the
courts, to appoint and fix the compensation of

[22] As a result "the original authority and duty of the plaintiff civil
service commission was diminished *pro tanto,* by the act of 1965
[establishing the PERA], to the extent of free administration of the
latter according to its tenor". *Wayne County Civil Service Commis-
sion v Wayne County,* 384 Mich 363, 374; 184 NW2d 201 (1971).

public employees who perform services for the courts.[23]

---

[23] The board of commissioners is authorized to "prescribe and fix the salaries and compensation of all employees of their respective counties where not fixed by law". (MCLA 46.11; MSA 5.331.) In Wayne County, the board of county auditors is authorized "to determine the number of the clerks and assistants to be employed in the several county offices, and to fix the compensation of the deputies, clerks and assistants employed in the several county offices, and in the circuit, probate and justice's courts". (MCLA 47.58; MSA 5.608).

Judicial clerks, appointed by the Governor upon recommendation of the circuit judge, receive a salary "in accordance with the official salary plan of the county where the county has adopted civil service under Act No. 370 of the Public Acts of 1941", the act superseded *pro tanto* in *Wayne County Civil Service Commission v Board of Supervisors, supra* (fn 22), or "as fixed and determined by the board of supervisors for the county where the county has not adopted civil service". (MCLA 600.565; MSA 27A.565). *See, also,* MCLA 600.579; MSA 27A.579 as to the compensation of deputy circuit court clerks.

In circuits having 20 or more judges, a court administrator may be appointed with compensation fixed by the judges "within the sum appropriated *therefor* by the legislative body". (Emphasis supplied.) (MCLA 600.567; MSA 27A.567.)

The court stenographer, appointed by the Governor on the recommendation of the judge, receives a salary *from the county specified* in the statute. (MCLA 600.1114; MSA 27A.1114.) If a temporary absence of a stenographer is due to illness, a stenographer pro tempore is to be paid "such sum as may be approved by the county board of supervisors or * * * board of auditors" not exceeding 30 calendar days in any one calendar year. (MCLA 600.1106; MSA 27A.1106.) Whenever a judge "deems it necessary for the dispatch of business of such court he may authorize the stenographer thereof to employ 1 or more temporary assistants who shall receive compensation to be paid by the county, after the judge of the court certifies to the reasonableness thereof." (MCLA 600.1107; MSA 27A.1107.) "All stenographers shall be eligible for membership in and benefits of the retirement or the social security plan by the county or any one of the counties which pays a portion of his salary." (MCLA 600.1116; MSA 27A.1116.) "The board of supervisors of the counties in any judicial circuit may appropriate annually from the general fund additional amounts to supplement the salary of any stenographer." (MCLA 600.1168; MSA 27A.1168.)

"The circuit courts and superior court may employ law clerks for the court or for each judge of such courts. * * * The compensation of the law clerks shall be fixed by the judges of the court within the sum appropriated *therefor* by the legislative body". (Emphasis supplied.) (MCLA 600.1471; MSA 27A.1471.)

Every state court of record having 10 or more judges "may appoint an attorney to serve as judicial assistant to their court". The compensation of the judicial assistant shall be "fixed by the recommending judges within the sum appropriated *therefor* by the legislative body". (Emphasis supplied.) (MCLA 600.1481; MSA 27A.1481.)

While circuit judges are statutorily authorized to fix the compensation of a few specified employees, the statutes vest the board of supervisors (now the board of commissioners) or board of auditors with authority to determine the compensation of most circuit and probate court employees. See fn 23.

A major issue in *Bay County* was whether a district control unit may line-item budget a district court. This Court held that it could not, and that the district judges may decide how the funds appropriated will be expended "within the overall limits" of the appropriation.

The Legislature has not authorized the circuit court or the probate court, in contrast with the

---

A statute provides that upon recommendation of the circuit court, "the board of supervisors *may* create a marriage counseling service and *may* appropriate such sums of money as may be deemed sufficient by the board of supervisors for the establishment and maintenance of such service". It is specifically provided that in multi-county circuits, a board of supervisors "may refrain from participation and from making any appropriation". (MCLA 551.332; MSA 25.123[2].) (Emphasis supplied.)

The compensation of the Friend of the Court "shall be such sum as may be fixed by the board of supervisors of the counties adopting this act". (MCLA 552.254; MSA 25.174.)

The Michigan Corrections Commission appoints a chief probation officer and assistant probation officers on the recommendation of the circuit court "who shall receive such compensation as the boards of supervisors of the several counties shall provide". (MCLA 771.7; MSA 28.1137.)

The probate judge appoints probation officers who receive "such compensation as the board of supervisors may appropriate *for that purpose*". MCLA 712A.9; MSA 27.3178(598.9). (Emphasis added.) If a detention home is established as an agency of the probate court, the judge may appoint a superintendent or matron and other necessary employees who receive "such compensation as shall be provided by the board of supervisors". MCLA 712A.16(3); MSA 27.3178(598.16)(3). The Probate Code establishes a salary for the probate register and provides that the board of supervisors may supplement the statutory salary. MCLA 701.12; MSA 27.3178(12). The probate judge may appoint deputy registers who receive "such compensation as shall be fixed by the board of supervisors". MCLA 701.13; MSA 27.3178(13). The probate judge may appoint one or more court stenographers "at a reasonable salary fixed by the county board of supervisors." MCLA 701.14; MSA 27.3178(14).

district court, to "appoint the employees thereof
and fix their compensation" within appropriations
provided by the governing body of the county.
There is no "overall limit", there is no lump-sum
appropriation.

Such authority as has been conferred on circuit
judges to fix the compensation of specified judicial
employees has been limited to the amount appro-
priated "therefor"—for the specified employee(s)—
by the board of commissioners. See fn 23. Line-
item budgeting of the circuit and probate courts is
contemplated by the statutes.

## IV

Determination of the identity of the public em-
ployer requires, as this Court recognized in *Wayne
County Civil Service Commission, supra,* pp 367–
368, "the ascertainment of legislative intent when
there is no evidentiary or other reasonably author-
itative guide to pertinent meaning or purpose of
the legislators. For such difficulty Cardozo has
provided our first and most dependable range light
(The Nature of the Judicial Process, pp 14, 15,
published 1921):

" 'Interpretation is often spoken of as if it were
nothing but the search and the discovery of a meaning
which, however obscure and latent, had none the less a
real and ascertainable pre-existence in the legislator's
mind. The process is, indeed, that at times, but it is
often something more. The ascertainment of intention
may be the least of a judge's troubles in ascribing
meaning to a statute. "The fact is", says Gray in his
lectures on the "Nature and Sources of the Law", "that
the difficulties of so-called interpretation arise when the
legislature has had no meaning at all; when the ques-
tion which is raised on the statute never occurred to it;
when what the judges have to do is, not to determine
what the legislature did mean on a point which was

present to its mind, *but to guess what it would have intended on a point not present to its mind, if the point had been present.' "* (Emphasis by the Court.)

With that guideline, the Court concluded (p 373):

"In the words of Cardozo, we are left to *guess* what the 1965 legislature [which enacted the PERA] would have done had the point come to attention, and our *guess* is that it would have advised all established county civil service commissions as we now do by today's judgment." (Emphasis by the Court.)

In this case, our task is similarly to *guess* whether the 1965 Legislature, "had the point come to attention", would have designated the court or the board of commissioners as the public employer.

Our *guess* is that the Legislature would have designated the board of commissioners, not the court.

## V

While circuit and probate judges have the authority to fix court hours, hours of employment are not usually a matter of dispute. The critical issues are generally wages and other financial benefits.

The statutory authority conferred on circuit judges to fix the compensation of a few specified employees is limited to the amount appropriated "therefor".

This Court has held that retirement programs for public employees are a mandatory subject of collective bargaining.[24] Local court employees are not covered by separate judicial retirement programs but receive benefits under programs estab-

---

[24] *Detroit Police Officers Assn v Detroit,* 391 Mich 44; 214 NW2d 803 (1974).

lished by local units of government which also cover nonjudicial governmental employees or, in the case of state-compensated local court employees, state retirement programs. The bargaining agreement presently challenged obliges the Court System to make contributions for the court employees to the Livingston County Employees Retirement Plan.

The PERA requires a public employer to bargain with the representatives of its employees with respect to wages, hours and other terms and conditions of employment.

In such negotiations, the employees' representative is expected to urge, and the public employer is expected to consider, claims for increased compensation and benefits and other improvements in the conditions of employment. While circuit judges, in implementation of the legislative mandate on the counties or in the exercise of inherent power, may properly require the provision of funds adequate to hire and retain competent personnel *(Wayne Circuit Judges)*, a judge may not on the basis of that authority properly require expenditures beyond those minimum amounts necessary to achieve that goal.

Collective bargaining contemplated by the PERA cannot take place where the negotiating public employer, because of the impecuniosity or attitude of the appropriating authority, has no negotiating leeway.[25]

In determining the amounts to be appropriated for judicial needs, a board of commissioners necessarily considers other county needs and the wage levels of other employees paid with county funds.

---

[25] The success, in terms of the objectives of the PERA, of the designation in *Bay County* of the district court as the public employer will depend on the appropriations-responsiveness of the district control units to the wage and benefit levels sought to be negotiated by the public employee representatives and the district judges.

Having in mind those factors and the statutory pattern, our "guess" is that the Legislature would have designated the board of commissioners, not the court, as the public employer to bargain collectively concerning wage levels and other benefits to be paid to circuit and probate court employees.

Designation of the county as the public employer of court employees neither places the courts at the "mercy" of the board of commissioners nor negates or denies the existence of a court's inherent power in cases of emergency, urgency, or necessity to compel appropriation of funds *necessary* to *preserve* the operation of the court. If collective bargaining between the county and the representative of court and other employees results in an inadequate compensation and benefit level causing resignations and precluding the hiring of competent court employees, the circuit court can intervene under the legislative mandate on the counties or under inherent power and require the payment of such amounts as may be *necessary* to hire and retain the services of competent personnel.

The record in this case presents no challenge to the fundamental powers of any court. There is understandable desire to preserve judicial prerogatives, but that should not affect analysis of the narrow question of statutory construction presented.

VI

In conjunction with *Wayne Circuit Judges (On Rehearing),* this Court promulgated an administrative order prohibiting any judge "by peremptory writ or otherwise" from ordering the expenditure of public funds for any judicially required purpose "until he has submitted his proposed writ or order

to the constitutional office of Court Administrator".[26]

This review procedure was established as a constraint on the improvident exercise by judges of the inherent power, asserted in *Wayne Circuit Judges (On Rehearing)*, to promulgate orders in emergency situations. It was not designed to review collective bargaining agreements.

After the collective bargaining agreement in this case was signed, the circuit judge issued an administrative order implementing the agreement and submitted the order to the Court Administrator for approval. The Court's opinion in this case "affirms those actions as being correct. The order [of the circuit judge in this case] might not in some cases be necessary, but if it is, the review by the Court Administrator becomes a step in insuring the reasonableness and necessity of the contractual provisions."

The Court concludes: "Once the Court Administrator has approved a contract the Board of Commissioners may institute adversary court proceedings to test the reasonableness and necessity of the contract if it appears that the budget reflecting the contract will exceed the total appropriation. The commissioners may file suit promptly for injunctive relief in circuit court in their own county. Since the purpose of such suit would be to enjoin

---

[26] "As provided by the opinion of this Court in the case of Judges of the Third Judicial Circuit of Michigan v County of Wayne, et al., No. 52381, it is ordered that no judge of a subordinate court may hereafter, by peremptory writ or otherwise, order the expenditure of public funds for any judicially required purpose until such judge has submitted his proposed writ or order to the constitutional office of Court Administrator (Const 1963, art 6, § 3), and has obtained due approval thereof by that office. This restraint shall not apply to orders for payment of trial or appellate costs in cases where same are due for entry on behalf of indigent defendants accused or convicted of felony." Administrative Order No. 1971-6. Entered November 9, 1971, 386 Mich xxix.

an administrative order of a judge of that very county, the commissioners may seek designation by the Court Administrator of a disinterested judge to decide the case on its merits. In order to expedite the settlement of disputes over wages and working conditions, any appellate review of the decision of the circuit court shall be by direct application for leave to appeal to this Court, and no writ of mandamus shall lie under Administrative Order 1971–6 until such proceedings, promptly begun and diligently pursued, are terminated."

The preceding statements further support our *guess* that the 1965 Legislature would not have designated the circuit or probate courts as the public employer. Collective bargaining subject to Court Administrator review, disinterested judge review and direct appellate review by this Court is not the kind of collective bargaining contemplated by the PERA.

It is no answer to say that while the Court "is aware that this procedure may prolong public employee collective bargaining, and thus may disappoint the union and its membership", it "reminds the parties, however, that the Legislature has based public employee collective bargaining in Michigan on an industrial model. Such a model contains inherent difficulties when the ultimate public employer, the voting public, has elected representatives to three separate units in order to govern itself fairly."

The difficulty arises not from the Legislature's choice of the "industrial model", but rather from the desire of the judiciary to control the budgeting process. That objective may be sound and its achievement beneficial to the proper functioning of our judicial system. But the desirability of that

objective and of state-wide financing and of unitary budgeting are not appropriate considerations in resolving the issue of statutory construction before us.

Any change in the method of financing or budgeting the judicial branch is a legislative, not a judicial, responsibility. However desirable or beneficial the sought-for change may be, it does not create an emergeny justifying invocation of inherent power—a power to be "cautiously exercised" per DETHMERS-BLACK *(Wayne County Judges v Wayne County,* 383 Mich at 33). Although the present system of local financing supplemented by state financing may not be optimally efficient and may allocate and distribute revenue in a less than satisfactory manner, it has enabled the one court of justice to function "serviceably as a co-equal branch of Michigan's government" for 138 years.

## VII

It appears that there were adequate funds, at least temporarily, to pay the additional wages and benefits provided by the challenged collective bargaining agreement. A surplus developed because the county appropriated more than was expended for indigent defendants' attorneys' fees and jurors' fees. The Livingston County Circuit Court has diverted funds appropriated for one purpose to another. The message to the counties is clear, and a rueful precedent has been established.

This collective bargaining agreement requires expenditures for increased wages and benefits greater than the amounts appropriated *therefor.* Livingston County asserts that the agreement provides greater compensation and benefits than other county employees receive.

Allowing a court to negotiate a collective bargaining agreement requiring expenditures beyond legislative appropriations eliminates the balance the Legislature has always provided whenever it has authorized a judge—district or circuit—to appoint employees and fix compensation. That balance has been generally expressed with the words "within amounts appropriated". Even if judges and courts are to become "public employers", now or in the future, the limit on the financial obligations they may properly assume in a collective bargaining agreement is the amount appropriated by a legislative body.

Courts do not possess inherent power to appropriate money or require expenditures for whatever needs the judge, the Court Administrator, and this Court on review, determine are reasonable. Inherent power exists only for true emergencies. We beguile ourselves, the unions and their members if we assert otherwise.

We would enter an order declaring that the public employer of circuit court and probate court employees of Livingston County is the Board of Commissioners of that county and that the 53rd District Court is the public employer of district court employees, set aside the orders entered by the circuit judge and the Court Administrator and remand to the circuit court for such further proceedings as may appear appropriate; pending the negotiation of new agreements or until the expiration of 180 days from decision in this Court, whichever is sooner, the employees affected to receive benefits under the collective bargaining agreement made effective January 1, 1973.

T. G. KAVANAGH, C. J., concurred with LEVIN, J.