AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, MICHIGAN COUNCIL 7, AFL-CIO v
DEPARTMENT OF HEALTH

1. LABOR RELATIONS—PUBLIC EMPLOYERS—COLLECTIVE BARGAINING—
   PRIVATE EMPLOYERS—JOINT EMPLOYMENT—STATUTES.

   The public employment relations act does not require a public
   employer to bargain collectively with the employees of a pri-
   vate employer who holds a contract with the public employer,
   but a public employer is required under the act to bargain
   collectively with its public employees who also happen to be
   jointly employed by a private employer (MCLA 423.215; MSA
   17.455[15]).

2. LABOR RELATIONS—STATUTES—COLLECTIVE BARGAINING—INDEPEN-
   DENT CONTRACTORS—JOINT EMPLOYMENT.

   A finding that a public employer has a contract with an indepen-
   dent contractor who employs labor does not preclude a finding
   that the public employer is also a joint employer of the em-
   ployees hired by the independent contractor, and that it is
   therefore subject to the collective bargaining requirements of
   the public employment relations act as to those employees.

3. LABOR RELATIONS—PUBLIC EMPLOYERS—JOINT EMPLOYMENT—PRI-
   VATE EMPLOYERS—QUESTIONS OF FACT—CHARACTERISTICS OF EM-
   PLOYER.

   It is a question of fact whether a public agency possesses suffi-
   cient indicia of control over workers hired by an independent
   contractor to labor on the agency's behalf to be considered an
   employer of those workers; the general characteristics of an
   employer are, (1) that it selects and engages the employee, (2)

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 5] 48 Am Jur 2d, Labor and Labor Relations §§ 414, 1191 *et seq.,*
   1201.
   Validity and construction of statute or ordinances providing for
   arbitration of labor disputes involving public employees. 68
   ALR3d 885.
[4] 48 Am Jur 2d, Labor and Labor Relations § 1188.
[6] 48 Am Jur 2d, Labor and Labor Relations §§ 972, 973.
[7] 48 Am Jur 2d, Labor and Labor Relations §§ 704, 807 *et seq.*

that it pays the wages, (3) that it has the power of dismissal, and (4) that it has power and control over the employee's conduct.

4. APPEAL AND ERROR—LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—FINDINGS OF FACT—RECORD SUPPORT—STATUTES.

Findings of fact of the Employment Relations Commission are conclusive on appeal where they are supported by competent, material and substantial evidence on the record, considered as a whole (MCLA 423.23[e]–[f]; MSA 17.454[25][e]–[f]).

5. LABOR RELATIONS—COLLECTIVE BARGAINING—EMPLOYMENT RELATIONS ACT—EMPLOYER-EMPLOYEE RELATIONSHIP.

An employer-employee relationship may properly be found where the conditions of employment are such that the process of collective bargaining can appropriately be utilized as contemplated by the public employment relations act (MCLA 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

6. LABOR RELATIONS—LABOR RELATIONS BOARD—CONSOLIDATION OF CASES—REPRESENTATION—UNFAIR PRACTICES.

The labor relations board or its agent may, in appropriate cases, consolidate representation and unfair labor practice proceedings for hearing and decision.

7. LABOR RELATIONS—UNFAIR PRACTICES—STATUTES.

An "unfair labor practice" is any practice which frustrates the objectives of the labor mediation act or the public employment relations act (MCLA 423.1 *et seq.,* 423.201 *et seq.;* MSA 17.454[1] *et seq.,* 17.455[1] *et seq.).*

Appeal from the Employment Relations Commission. Submitted June 13, 1977, at Detroit. (Docket No. 27975.) Decided September 20, 1977. Leave to appeal applied for.

Complaint by the American Federation of State, County and Municipal Employees, Michigan Council 7, AFL-CIO, against the Michigan Department of Health, the Wayne Center for the Retarded and the Detroit-Wayne County Mental Health Services Board before the Employment Relations Commission alleging unfair labor practices. Defendant Detroit-Wayne County Mental Health Services

Board appeals from the commission's decision in favor of plaintiff. Affirmed.

*Zwerdling & Maurer* (by *Judith A. Scott),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone, Thomas R. Wheeker,* and *Terry J. Nosan,* Assistants Attorney General, for the Department of Health.

*Aloysius J. Suchy,* Wayne County Corporation Counsel, and *Joseph P. Girolamo,* Assistant Corporation Counsel, for Detroit-Wayne County Mental Health Services Board.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for the Employment Relations Commission.

Before: R. M. MAHER, P. J., and N. J. KAUFMAN and F. J. BORCHARD,* JJ.

N. J. KAUFMAN, J. Plaintiff American Federation of State, County and Municipal Employees Michigan Council 7, AFL-CIO (hereinafter referred to as AFSCME) filed a charge with the Michigan Employment Relations Commission (hereinafter referred to as MERC) against the Michigan Department of Health and Wayne Center for Retarded (hereinafter referred to as WCR) and the Detroit-Wayne County Mental Health Services Board (hereinafter referred to as the Board) alleging an unfair labor practice in that WCR and the Board refused to bargain with AFSCME who was a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

representative of employees at WCR. The defendant Board appeals from an adverse determination by MERC.

The facts are not in dispute. On October 10, 1973, AFSCME filed a petition for election with MERC in accordance with the provisions of the labor mediation act (hereinafter referred to as LMA), MCLA 423.1 *et seq.;* MSA 17. 454(1) *et seq.* (1939 PA 176). The petition designated WCR as a private employer and delineated the appropriate bargaining unit. On February 4, 1974, MERC issued a certification of representative effectuating AFSCME's request. WCR and AFSCME thereupon engaged in collective bargaining.

Apparently AFSCME became dissatisfied with the collective bargaining arrangement because, on November 22, 1974, it filed an "unfair labor practice" charge with MERC, MCLA 423.216; MSA 17.455(16), alleging *inter alia* a refusal to bargain on the part of the Michigan Department of Mental Health and the Board. The charge was filed pursuant to the provisions of the public employment relations act (hereinafter referred to as PERA), MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.* (1965 PA 379), and for the first time it asserted the existence of an employer-employee relationship with governmental entities.

AFSCME's dissatisfaction stemmed from the fact that WCR was unable to act on certain key bargaining subjects such as wages and fringe benefits without involving the appellant Board. To remedy this situation, AFSCME sought to include the Board in contract negotiations, but its efforts were opposed by WCR and rejected by the Board.

At the hearing on the unfair labor practice charge, counsel for the Board noted that neither the petition for election nor the certification of

representative named it as an employer. It therefore contended that it could not be subject to an unfair labor practice charge. The Board noted that both the LMA and the PERA place a duty to bargain on the *employer.* The administrative law judge overruled the Board and conducted the hearing.

The testimony and exhibits elicited at the proceeding revealed considerable evidence of the precise nature of the relationship between the appellant Board and WCR.

The Michigan Mental Health Code, (MCLA 330.1001 *et seq.;* MSA 14.800(1) *et seq.),* authorizes a Michigan county to establish a county community mental health program which will provide a range of mental health services for persons located within the county.

Such programs are administered by an official county agency, known as a county community mental health board. These boards are charged with the planning, coordinating, funding and evaluating of mental health services within the county. They are authorized to enter into contracts with public or private agencies for the purchase of mental health services or, if they desire, to provide such services directly through employees whom they directly hire, pay and control. The latter method is followed by most counties throughout the state. Wayne is one of the few counties which contracts for the purchase of such services.

The mental health program adopted by Wayne County is administered by the appellant Board. It is funded principally with money furnished by the state and some matching funds supplied by the county.

The Board has entered into contracts with approximately 40 agencies (some of which are public,

and some of which are private) to provide the services necessary to carry out the program which the county has adopted. One of the agencies which has contracted to provide services for the Board is WCR.

WCR is a private nonprofit corporation. It is staffed by a number of employees, including social workers and other technicians, who are equipped to provide services to the mentally retarded. It has no source of financing other than the funds which are allocated to it by the Board.

The contract between the Board and WCR provides that the services to the retarded will be performed by individuals who are hired by the center, and paid with funds which the center receives from the Board.

Since 1973, the defendant Board has entered into annual contracts with WCR for the delivery of services to the mentally retarded. WCR has functioned on full funding from the appellant Board, with the contractual understanding that the Board would reduce its payments to WCR by any amount of revenue obtained elsewhere by the agency. Consequently, the budgetary figure awarded WCR in its contract with the Board reflects the total dollar revenue available to the agency.

The annual contracts between WCR and the Board are drawn pursuant to a budget plan which the center submits to the Board. Such a plan normally includes "manning tables" with the names and classifications of the workers involved and their salary and fringe benefit allocations. The contract, when executed, limits WCR to the pay schedules and position classifications set forth therein.

Dr. Mel Ravitz, Director of the Detroit/Wayne County Mental Health Services Board, testified

that the Board provides funds to WCR but does not participate in the day-to-day operations of the facility. Funding for WCR is derived solely from the state and the Board only monitors its activities to insure fulfillment of the contract. Dr. Ravitz further testified that WCR employees were completely independent of the Board, with the Board having no input into screening, hiring, firing or discharge.

Dr. Ravitz stated further that the Board received the line item appropriation from the state which the Board was obligated to spend for the provision of specified services for the retarded.

Ravitz conceded in his testimony before MERC's administrative law judge, that any deviation in WCR's manning pattern must be approved by the Board. Likewise, once the budget is set, WCR is not free to abolish a position in order to allocate the money elsewhere, unless approved by the Board. In fact, any transfer of funds from one account item to another requires the Board's permission.

Affirming the findings of the administrative law judge, MERC found that the Board and WCR had engaged in an unfair labor practice under § 10 of the PERA, MCLA 423.210; MSA 17.455(10), and § 16 of the LMA, MCLA 423.16; MSA 17.454(17). Specifically, the Board and WCR were found to have refused to bargain as joint employers with AFSCME.

On appeal, the defendant Board contends that it cannot be found guilty of unfair labor practices where AFSCME petitioned for an election and designated WCR as the employer. Defendant Board argues it could not bargain if it wanted to because WCR did not want it involved.

In briefs submitted by the Wayne County Corpo-

ration Counsel, defendant-appellant argues that MERC erred as a matter of law in concluding that the Board is a joint employer of WCR employees. Additionally, it contends that MERC erred as a matter of law in using a refusal-to-bargain proceeding as a procedure for determining employer status.

At the outset of our discussion, we note that this is a case of first impression. The decision in this case thus would appear to have far-reaching implications in an area in which little or no authority exists. There seems much merit in defendant-appellant's contention that none of the common law indicia of an employment relationship between WCR employees and the Board are present. It is true that the Board merely reviews and approves WCR's budget; it does not hire, fire, discipline, or supervise WCR employees. However, we must examine the statutory framework in which the Legislature has cloaked this area to see whether a contrary intent is discerned among the folds.

A preliminary matter that provides a logical introduction to the issues presented on appeal is appellant's claim that MERC is not authorized to impose on a public employer a duty to bargain with employees of a private employer.

The public employer's duty to bargain is mandated by MCLA 423.215; MSA 17.455(15), (Section 15 of PERA):

"A public employer shall bargain collectively with the representatives of its employees as defined in Sec. 11 [Sec. 423.211] and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative * * * in good faith with respect to wages, hours, and other terms and

conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession."

Thus, PERA requires that a *public employer* bargain with the representatives of its *public employees*. We agree with the Board that PERA does not obligate a public employer to bargain with the employees of a private employer.

But that statement does not end our inquiry. If the WCR employees are also Board employees then the Board must collectively bargain with them as public employees. It should be noted that the Michigan Supreme Court in *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 53; 214 NW2d 803 (1974), held:

"Section 15 of PERA undoubtedly was patterned after § 8(d) of the National Labor Relations Act (NLRA). Both statutes use almost identical language in describing the duty to bargain. The decision by the Michigan Legislature to adopt the language of section 8(d) of the NLRA is significant. Section 8(d) has been a part of the NLRA since the Taft-Hartley amendments of 1947. The terms of section 8(d) have been litigated in numerous cases before the National Labor Relations Board (NLRB) and the Federal courts. Although we cannot state with certainty, it is probably safe to assume that the Michigan Legislature intentionally adopted § 15 PERA in the form that it did with the expectation that MERC and the Michigan courts would rely on the legal precedents developed under NLRA, § 8(d) to the extent that they apply to public sector bargaining. Edwards, *The Emerging Duty to Bargain in the Public Sector,* 71 Mich L Rev 885, 895 (1973)."

Both the Board and AFSCME agree that PERA does not define "public employer". In *Wayne County Civil Service Commission v Wayne County Board of Supervisors,* 22 Mich App 287, 294; 177 NW2d 449 (1970), Judge (now Justice) FITZGERALD said:

"We note that this whole action comes to us as a by-product of the passage of PA 1965, No. 370, *supra.* After a careful examination of the pertinent provisions of this act, nowhere within it is the term 'public employer' defined."

Justice LEVIN, dissenting in *Livingston County v Livingston Circuit Judge,* 393 Mich 265; 225 NW2d 352 (1975), simply noted that "neither a definition of nor procedure for determining the 'public employer' is provided".[1]

The Board asserts that the true relationship between it and WCR is simply one of independent contractor status. This may or may not be true. However, that argument in no way precludes a finding of joint employer status as to the employees.

In *Boire v Greyhound Corp,* 376 US 473, 481; 84 S Ct 894; 11 L Ed 2d 849 (1964), the United States Supreme Court dismissed the significance of the independent contractor relationship in a situation similar to this case. In *Boire,* the NLRB had found Greyhound Co. to be a joint employer of the employees of Floors Co. with whom Greyhound had contracted. The United States Supreme Court held:

"Whether Greyhound, as the Board held, possessed sufficient control over the work of the employees to

---

[1] In all likelihood the 1965 Legislature did not even consider the question.

qualify as a joint employer with Floors is a question *which is unaffected by any possible determination as to Floors' status as an independent contractor, since Greyhound has never suggested that the employees themselves occupy an independent contractor status."* 376 US at 481. (Emphasis added.)

The Board does not contend that the employees involved in the instant case are independent contractors. Therefore, the exact relationship between appellant and WCR is irrelevant, as was the relationship in *Boire, supra.*

This Court in *Wayne County, supra* at 294, attempted to isolate the criteria identifying an employer:

" * * * we find the general characteristics of identification of an employer are: (1) that they select and engage the employee; (2) that they pay the wages; (3) that they have the power of dismissal; (4) that they have the power and control over the employee's conduct."

As in *Boire, supra* at 475, the question of whether the Board possessed sufficient indicia of control to be considered an employer is one of fact.

As a factual issue, MERC's determination is subject to only limited judicial review. The standard of appellate review of MERC Board findings of fact is set forth in the LMA:

"The findings of the board with respect to questions of fact if supported by competent, material and substantial evidence on the record considered as a whole shall be conclusive." MCLA 423.23(e)–(f); MSA 17.454(25)(e)–(f).

This standard comports with Const 1963, art 6, § 28 and § 106 of the Administrative Procedures

Act (MCLA 24.101 *et seq.;* MSA 3.560(101) *et seq.)* regarding the minimum constitutional scope of judicial review of administrative decisions. *MERC v Detroit Symphony Orchestra,* 393 Mich 116, 121; 223 NW2d 283 (1974), *Municipal Employees v Chesaning,* 62 Mich App 157; 233 NW2d 511 (1975), *Van Buren Public School District v Wayne Circuit Judge,* 61 Mich App 6; 232 NW2d 278 (1975), *MERC v Kleen-O-Rama,* 60 Mich App 61; 230 NW2d 308 (1975). However, our understanding of that standard of appellate review, limited in scope though it may be, does not permit us to unthinkingly ratify MERC actions. Despite some testimonial support for MERC conclusions, there is a point at which findings of fact can grow into an error of law. *International Union of Operating Engineers v Sinai Hospital,* 64 Mich App 18, 21; 234 NW2d 772 (1975).

The facts in this case reveal that the employees perform services for the Board and county which the Board and county are required by law to undertake. Although their wages are paid by WCR, WCR receives its funding from the Board and the county. The Board determines the qualifications necessary for employment in a particular position, sets the amount to be paid as wages, and earmarks a certain amount of money for that purpose. Any additional funds the WCR receives from contributions cannot be used to increase wages but must be turned over to the Board.

In this factual setting, a meticulous adherence to common-law definitions would not further the purpose of Michigan's labor law framework. Indeed, the United States Supreme Court has realized that, on occasion, a more flexible conception of the term "employer" is required. In *NLRB v E C Atkins & Co,* 331 US 398; 67 S Ct 1265; 91 L Ed

1563 (1947), the United States Supreme Court, in formulating the definition of an employer-employee relationship under the National Labor Relations Act, rejected the strict application of technical and traditional common law definitions. Specifically, the United States Supreme Court found that guards at a military defense plant were employees of the defense contractor despite the fact that the War Department directed the work at the plant:

"In this setting, it matters not that respondent was deprived of some of the usual powers of an employer, such as the absolute power to hire and fire the guards and the absolute power to control their physical activities in the performance of their service. Those are relevant but not exclusive indicia of an employer-employee relationship under this statute. As we have seen, judgment as to the existence of such a relationship for purposes of this Act must be made with more than the common law concepts in mind. *That relationship may spring as readily from the power to determine the wages and hours of another coupled with the obligation to bear the financial burden of those wages and the receipt of the benefits of the hours worked, as from the absolute power to hire and fire or the power to control all the activities of the worker.* In other words, where the conditions of the relation are such that the process of collective bargaining may appropriately be utilized as contemplated by the Act, the necessary relationship may be found to be present." 331 US at 413–414 (Emphasis added.)

Based on the reasoning cited above and the facts cited earlier, there was sufficient evidence to support the administrative law judge's finding:

"The Board has every appearance of an 'employer'

relationship with the WCR employees. The Board controls, to a large degree, the wages and classifications of the people working at the WCR. It is the duty of the Board to specifically review performance and individual wages before submitting monetary requests to the State of Michigan. There does not appear to be any prohibition against the Board consulting with or bargaining with the Charging Party as to what wages or fringe benefits will be in the requested budget."

The defendant Board must therefore bargain with the WCR employees subject to the provisions of PERA.

Finding that the Board is also an employer of the WCR employees does not resolve all of the Board's contentions on appeal. As noted above, the Board contends that it cannot be found guilty of unfair labor practices because it was not originally named as an employer. The Board's position is not well-taken. MERC regulation 423.444(2) (1968 AACS, p 4770), states that "[i]n appropriate cases, the board or its agent may consolidate representation and unfair labor practice proceedings for hearing and decision".

This is an appropriate case. To hold otherwise would put AFSCME in an untenable position. It could bargain with WCR as to working conditions but not as to wages and fringe benefits; as to wage and fringe benefits, it could not bargain with anyone.

It is unfortunate that the term "unfair labor practice" has gained such a pejorative gloss. It merely refers to any act which frustrates the objectives of LMA and PERA. The Board's action in refusing to bargain with AFSCME did frustrate the goals of those acts. Therefore, MERC's order (adopting the recommended order of the adminis-

trative law judge) that the Board bargain in good faith with AFSCME is affirmed.[2]

Affirmed.

---

[2] We cannot concern ourselves with the implications of this decision on the other 39 contracting agencies as each has its own contract. Unless and until one of those other contracts is brought here for review, this Court must confine itself to the dispute between AFSCME and the Board.